AT

## COUNCIL BLUFFS, MARCH TERM, A. D. 1884.

IN THE THIRTY-EIGHTH YEAR OF THE STATE.

PRESENT:

HON. JAMES H. ROTHROCK, CHIEF JUSTICE.
" JOSEPH M. BECK,
" AUSTIN ADAMS,
" WILLIAM H. SEEVERS, } JUDGES.
" JOSEPH R. REED,

## ALLEN ET AL. v. CLAYTON ET AL.

1. **Constitutional Law:** LANGUAGE NOT FREE FROM DOUBT: AIDS TO BE CONSIDERED IN CONSTRUING. Where the meaning of the language of the constitution is not entirely clear and free from doubt, it is proper, in determining the true intent of such language, to consider, *First*, the context relating to the same subject-matter; *Second*, the evil intended to be remedied by the adoption of the constitution; *Third*, the debates in the convention which formed the constitution; *Fourth*, the contemporaneous legislative construction of the language in question; and *Fifth*, the practical construction given to the language, and long acquiesced in, by the people of the state.

2. **Banking Corporations:** FOR DISCOUNT AND DEPOSIT ONLY: LIABILITY OF STOCKHOLDERS FOR CORPORATE DEBTS: CONSTITUTIONAL LAW. When construed in the light of the considerations above named,

Sec. 9, Art. 8, of the constitution of 1857, making "every stockholder in a banking corporation" liable for corporate debts, must be regarded as applying only to such banking corporations as *issued bills to circulate as money;* and, after the adoption of said constitution, it was still competent for banking corporations for *discount and deposit only* to organize under the general incorporation laws of the state, and to exempt the private property of stockholders from liability for corporate debts.

*Appeal from Jefferson Circuit Court.*

TUESDAY, MARCH 18.

THIS is an action in equity, and it was commenced in the district court. The petition states that in 1871 the Farmers' and Merchants' Bank of Bloomfield was incorporated, with an authorized capital of one hundred and fifty thousand dollars, which afterward, in 1874, was increased to two hundred thousand dollars; that said corporation was organized to engage in and carry on the business of banking, under chapter 52 of the Revision. A copy of the articles of incorporation is attached to and made a part of the petition. It is further stated that said corporation did engage in such business, but not as a bank of issue, and did not issue bills to circulate as money, and that, in the course of its business, said corporation became indebted to the plaintiffs for money had and received; that the defendants were stockholders in said corporation, and that the amount of stock owned by each is stated in the petition; that under section nine, article eight, of the constitution, the defendants are individually liable to the plaintiffs, upon the indebtedness of said bank, to the amount of stock held by each of them in said corporation, and that said bank is insolvent. Appropriate relief is asked.

To the petition the defendants demurred, on the ground that the constitutional provision referred to in the petition only applied to banks of issue; that is, those which issued bills to circulate as money. The demurrer was overruled, and the defendant's motion to change the place of trial was sustained, and the cause transferred to the circuit court. The defendants elected to stand on their demurrer, and the circuit

court rendered a decree granting the relief asked in the petition, and the defendants appeal.

*Trimble, Carruthers & Trimble, Wright, Cummins & Wright, Payne & Eichelberger, Jones & Steel* and *Amos Stickel*, for appellants.

*D. P. Stubbs*, for appellees.

SEEVERS, J.—The first constitution was adopted in 1846, and it contained the following provisions: (See Art. 8.)

"SECTION 1. No corporate body shall hereafter be created, renewed or extended, with the privilege of making, issuing or putting in circulation any bill, check, ticket, certificate, promissory note, or other paper, or the paper of any bank, to circulate as money. The general assembly of this state shall prohibit by law any person or persons, association, company or corporation, from exercising the privileges of banking, or creating paper to circulate as money.

"SEC. 2. Corporations shall not be created in this state by special laws, except for political or municipal purposes; but the general assembly shall provide by general laws for the organization of all other corporations, except corporations with banking privileges, the creation of which is prohibited. The stockholders shall be subject to such liabilities and restrictions as shall be provided by law. The state shall not, directly or indirectly, become a stockholder in any corporation."

Under the foregoing provisions, corporations having the power to issue bills to circulate as money were absolutely prohibited, but corporations having the banking powers of discount and deposit could lawfully exist; and such seems to have been the opinion of the first general assembly which convened under the constitution, in November, 1846. It proceded to pass the general incorporation law contemplated by the constitution, which provided that any number of persons might incorporate themselves for the transaction of any

·business which might be the lawful subject of a general partnership, and the incorporators were authorized to exempt private property from the payment of corporate debts.    Chap. 81, Acts First General Assembly.

If any statute was enacted, as required by the constitution, at that or any subsequent session of the general assembly, prohibiting any "person, association, company or corporation from exercising the privileges of banking, or creating paper to circulate as money," our, attention has not been called to it.    The reason for this omission we suppose to be that, if there was no constitutional provision upon the subject, it required an affirmative statute so authorizing, before any corporation or person could issue bills to circulate as money.

But it is undoubtedly true that in 1846 a general partnership could have been formed for the purpose of discounting bills, receiving deposits and issuing evidence of indebtedness therefor, and no other statute than the general incorporation law was required to enable corporations under it to engage in and lawfully transact the banking business of discount and deposit.

A similar statute to the general incorporation law was afterwards enacted in 1851—Chap. 43 of the Code of 1851; and the same statute in substance has ever since been in force. Rev., Chap. 52; Code, Title 9, Chap. 1.

This constitution remained in force until the adoption of the new constitution in 1857, and it is historically true that many corporations had been organized in other states between the periods above stated, with power to issue bills to circulate as money, and that this state was flooded with such bank bills. Their value was uncertain, and great dissatisfaction was ex-·pressed in the public journals, and otherwise, with the restrictive provisions of the constitution of 1846, in relation to corporations having power to issue bills to circulate as money. It was said that there should be organized in this state banks of issue, which being under the control of the state, there would at least be some guaranty as to their solvency.    The

convention and constitution of 1857 were the outgrowth of this public sentiment. We hazard nothing in making the assertion that, but for the public demand for the abrogation of the constitution of 1846, and the adoption of one under which corporations with power to issue bills to circulate as money could be organized, the constitution of 1857 would not have been adopted. The great evil of the constitution of 1846, in the public estimation of the time, was the prohibition therein contained of banks with power to issue bills to circulate as money. No complaint was made, and it was not supposed, that the constitution of 1846 restricted or prohibited the establishment of banks of discount and deposit. But the popular demand was that banks with full banking powers should be authorized and established, to the end that the currency issued in other states, known as "red dog" and "wild cat," would be expelled from the state.

A convention was called, and the constitution of 1857 was adopted by the people, with reference to and full knowledge of the facts heretofore stated. It contains the following provisions:

"ARTICLE VIII—CORPORATIONS.

"Section 1. No corporation shall be created by special laws; but the general assembly shall provide by general laws for the organization of all corporations hereafter to be created, except as hereinafter provided.

"Sec. 2. The property of all corporations for pecuniary profit shall be subject to taxation, the same as that of individuals.

"Sec. 3. The state shall not become a stockholder in any corporation, nor shall it assume or pay the debt or liability of any corporation, unless incurred in time of war for the benefit of the state.

"Sec. 4. No political or municipal corporation shall become a stockholder in any banking corporation, directly or indirectly.

"Sec. 5. No act of the general assembly authorizing or creating corporations or associations with banking powers, nor amendments thereto, shall take effect, nor in any manner be in force, until the same shall have been submitted separately to the people at a general or special election, as provided by law, to be held not less than three months after the passage of the act, and shall have been approved by a majority of all the electors voting for and against it at such election.

"Sec. 6. Subject to the provisions of the foregoing section, the general assembly may also provide for the establishment of a state bank, with branches.

"Sec. 7. If a state bank be established, it shall be founded on an actual specie basis, and the branches shall be mutually responsible for each other's liabilities upon all notes, bills and other issues intended for circulation as money.

"Sec. 8. If a general banking law shall be enacted, it shall provide for the registry and countersigning by an officer of state of all bills or paper credits designed to circulate as money, and require security to the full amount thereof to be deposited with the state treasurer in United States stocks, or in interest paying stocks of states in good credit and standing, to be rated at ten per cent below their average value in the city of New York for the thirty days next preceding their deposit; and, in case of a depreciation of any portion of said stock to the amount of ten per cent on the dollar, the bank or banks owning said stock shall be required to make up said deficiency by depositing additional stocks; and said law shall also provide for the recording of the names of all stockholders in such corporations, the amount of stock held by each, the time of any transfer, and to whom.

"Sec. 9. Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or by her held, to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder.

"Sec. 10. In case of the insolvency of any banking institution, the bill-holders shall have a preference over its other creditors.

"Sec. 11. The suspension of specie payments by banking institutions shall never be permitted nor sanctioned.

"Sec. 12. Subject to the provisions of this article, the general assembly shall have power to amend or repeal all laws for the organization or creation of corporations, or granting of special or exclusive privileges or immunities, by a vote of two-thirds of each branch of the general assembly; and no exclusive privileges, except as in this article provided, shall ever be granted."

The first general assembly under the constitution of 1857 met in 1858, and it passed two acts contemplated by the constitution; one "authorizing general banking," and the other authorizing the establishment of a state bank and branches, with power to issue bills to circulate as money, and, in accordance with the constitution, these statutes were submitted to and approved by a majority of the electors. A state bank was organized, which issued bills which freely circulated as money, and it continued in existence until 1870. During this time, the general incorporation law, first passed in 1846, was in force, and it made no provision for filing and recording articles of incorporation of corporations formed under it, except those for the construction of works of internal improvement, in the office of the secretary of state. We, therefore, are unable to say whether the assertion made by counsel during the oral argument, that corporations with the banking powers of discount and deposit had been organized under the general incorporation law prior to 1870, is historically true or not; but as early as 1860 the existence of such corporations was recognized by the general assembly. Rev., page 280, Art. 2.

In 1870 all corporations organized under the general incorporation law were required to file and have the articles of incorporation recorded in the office of the secretary of state. Chap. 172, Acts of the Thirteenth General Assembly.

In that, the next, and succeeding years, down to the close of 1883, there have been organized under said statute nearly or quite one hundred corporations which have assumed the banking powers of discount and deposit, all of which, we shall assume, have exempted private property from the payment of corporate debts. The judicial and legislative history of the state fails to show that the right and power to so exempt private property have been doubted or denied from 1846 until the institution of this suit, a period of thirty-five years.

In the light of the foregoing facts, we have to determine the proper construction of article eight of the constitution of 1857. The first section of the article refers to corporations generally; the second to those for pecuniary profit; the third prohibits the state from becoming a stockholder in any corporation, and the fourth refers alone to banking corporations; and it is insisted that banks of discount and deposit, as well as those issuing bills to circulate as money, are there referred to; and, as the same words—"banking corporations"—are used in both sections four and nine, that the same construction must be placed on the same words in both sections. But this does not necessarily follow. The argument is entitled to great consideration, but it is not controlling. The same reason exists for prohibiting a municipal corporation from becoming a stockholder in one kind of a bank as in another. But as the bill-holder, as a matter of fact, is compelled to accept the circulating medium in use as money, and the depositor is a free agent, who can deposit his money in a bank or not, as he chooses, and whose residence is usually contiguous thereto, and, as the privilege of issuing bills to circulate as money is an exercise of sovereign power which belongs to the state, the same reasons for interference on the part of the state to protect the bill-holder do not exist as to the depositor. Besides this, the prohibition contained in section four is a limitation on the law making power, and may well be designated as the constitutional policy, which was not intended to act upon or control individual rights or liabilities.

Sections five, six, seven, eight, ten and eleven have exclusive reference to banks of issue, and the key note to all of them is found in section five. It is there provided that corporations with *banking powers* shall not be created, unless the statute so providing shall be submitted to and be approved by a majority of the electors of the state. This means full or unlimited banking powers; that is, the power to issue bills to circulate as money, and also the power to discount bills and receive deposits. The general incorporation law in force when the constitution of 1857 was adopted was broad enough, as we have said, to permit the organization of banks of discount and deposit, and something more than this was contemplated by the constitution. This being so, what is the proper construction of section nine? The words there used are *banking corporations*. The subject-matter contemplated in the several sections just mentioned, which precede, and also those which follow, section nine, is corporations having the power to issue bills to circulate as money. Clearly these are "banking corporations," just as certainly as those defined in section five as having banking powers. To arrive at the meaning of the words "banking corporations" in section nine, the sections preceding and following it, which have reference to the same subject-matter, must be read and considered.

This is a fundamental rule, to which there is no exception, unless the words to be construed have such a clear and precise meaning that there is and can be but a single conclusion as to what was meant. Counsel insist, and it is true, that there are banks of issue, and those of discount and deposit. If a corporation possessed all of these powers, it would be a banking corporation, and it would be such a corporation if it had the power only of issuing bills to circulate as money, or, if it only had the power to discount bills and receive deposits, it would still be a banking corporation.

The words "banking corporations," as used in section nine, therefore, do not necessarily include or refer to banks of discount and deposit. When all the provisions of the constitu-

tion bearing on the subject-matter are considered, it seems to us to be too clear for any reasonable doubt that "banking corporations" in section nine mean, and were intended to mean, the same thing precisely as "banking powers" in section five, and "banking institutions" in sections ten and eleven. We are unable to understand why the subject-matter of section nine should be construed to be other or different from the subject-matter of the sections which precede and follow it. Why should the words of section nine have attached to them a broader meaning, or include more, than it is self-evident similar words in sections five, ten and eleven were intended to mean or include?

Without doubt, the words "banking institutions," in sections ten and eleven, mean and have reference to the same kind of corporations as those contemplated in section five as having "banking powers," and the words "banking corporations" in section nine, in acccordance with the acknowledged rules of construction, must mean the same thing or class of corporations; that is, those with power to issue bills to circulate as money. This view, we think, is, to say the least, in accord with *Pape v. Capital Bank of Topeka*, 20 Kas., 440, and *The People v. Loewenthal et al.*, 93 Ill., 191. But if it can be said, when all the provisions of article eight are read and considered, that there is any doubt as to the correctness of the conclusion reached, then it is proper to consider:

*First.* The evil intended to be remedied by the adoption of the constitution of 1857; and here there is no room for serious doubt, as we have heretofore sufficiently indicated.

*Second.* This is confirmed by the debates in the convention which framed the constitution. It may be said with safety that banks of discount and deposit, as distinguished from those issuing bills to circulate as money, are not mentioned in the debates, or, if so, our attention has not been called thereto, while there are numerous references made to banks of issue. Our attention, however, is specially called to a proposition introduced into the convention, making the officers and stock-

holders of every corporation issuing bills to circulate as money individually liable (for corporate debts we suppose) during the time of their being officers and stockholders. This proposition was defeated in the convention. It is said that this action clearly indicates the intent of the convention. But what intent is indicated? None other, we think, than that the convention was unwilling to make the officers and stockholders liable to the extent contemplated by the proposition referred to, and thought that section nine, as it now stands, as it has been construed by us, was as far as it was necessary or proper to go.

*Third.* The contemporaneous legislative construction of the constitution; and here we desire to call attention to Art. 2, page 280, of the Revision, requiring "banking corporations to make quarterly statements." This clearly recognizes the existence of banking corporations having the powers only of discount and deposit. It cannot be presumed that the general assembly would do a foolish or unnecessary act, and, therefore, it must be assumed that there were corporations of the character indicated in existence, the legality of whose organization is clearly recognized by the statute above mentioned, which was passed within three years after the adoption of the constitution.

*Fourth.* The practical construction of the constitution adopted by the people of the state, as evidenced by the numerous banks of discount and deposit known to have been organized during and since 1870, and which are now engaged in doing a large business. To this must be added the fact that some of them failed and proved insolvent, and no such claim as the present was ever made, to our knowledge, until now. That all these matters may be and should be considered when the meaning of the words of the constitution are not entirely clear and free from doubt, see Cooley on Constitutional Limitations, 4 Ed. pp. 68 to 83, and authorities cited in notes. It seems to us that the words "banking corporations," used in section nine, mean banks of issue, and not

those of discount or deposit; and that, if this be doubtful, then the legislative and practical contemporaneous construction of the constitution leaves no room for doubt in this respect. The result is that the demurrer was erroneously overruled, and that the judgment below must be

REVERSED.