L. A. ANDREW, Superintendent of Banking, Appellee, v. AMERICAN SAVINGS BANK et al., Appellant.

No. 42139.

JANUARY 9, 1934.

E. A. Wissler, for appellant.

Edward L. O'Connor, Attorney-general, and L. H. Salinger, for appellee.

CLAUSSEN, C. J.—The American Savings Bank of Carroll, Iowa, was a corporation organized under the laws of the state of Iowa. Its name indicates that it was organized under the provisions of the law relating to the organization of savings banks. On the 19th day of September, 1931, it was adjudged insolvent, and L. A. Andrew, then superintendent of banking of the state of Iowa, was appointed receiver. In the meantime Andrew has been succeeded as such superintendent and receiver by D. W. Bates, who is now appellee herein.

The capital stock of the bank consisted of 500 shares each of the par value of $100. Subsequent to the appointment of the receiver, proceedings were instituted to enforce the statutory liability for a stock assessment against the stockholders of record at the time the bank became insolvent, and judgment was obtained against such stockholders in the aggregate amount of $50,000. Of this amount $28,353.17 has been paid, and $21,646.83 remains unpaid.

On the 20th day of November, 1923, appellant, D. W. Hanssen, became the owner of five shares of stock of said bank. He held such shares until the 11th day of May, 1931, at which time he sold the stock to E. L. Wegman, and a new certificate of stock was issued to the purchaser. · Concerning the bona fides of the sale no question is raised. Included in the total unpaid judgments of $21,646.83 is a judgment against Wegman on the stock purchased by him from Hanssen in the amount of $500. The record discloses that said judgment cannot be collected.

The condition of the bank was such, at the time the receiver was appointed, that, even though the 100 per cent assessment was collected in full, the creditors of the bank could not be paid in full. Subject to the objection that the fact was incompetent, immaterial, and irrelevant, it was admitted that, when the bank closed its doors, there were outstanding and unpaid $175,200.74 of certificates of deposit which were issued between the 20th day of November, 1923, the day when Hanssen acquired his stock, and the 11th day of May, 1931, when he parted with it. But there is nothing in the record to indicate that any of such certificates of deposit became due or were payable during this time or that the bank was in default in any respect in relation to such certificates of deposit.

For the purpose of this appeal it may be said that this suit was brought to recover judgment against Hanssen for $500 on the theory that he is now liable to an assessment of 100 per cent upon the shares of stock owned by him on account of the fact that certificates of deposit, which were issued druing the time he .held his stock in the bank, remain unpaid. The trial court rendered judgment against Hanssen, and from such judgment this appeal is prosecuted. The case presents only one question.

The receiver contends that the answer to the question is reasonably obvious if the history of the legislation creating liability upon the part of stockholders in banks is examined.

The provisions of article 8 of the Constitution of Iowa in relation to banks and banking were adopted by the Constitutional Convention of 1857. Among other provisions. the following section was incorporated at that time in this article of the Constitution:

"Sec. 9. Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors. over and above the amount of stock by him or her held, to an

amount equal to his or her respective shares so held for all of its liabilities, accruing while he or she remains such stockholder."

Section 9251 of the Code, under which the present action is brought, reads as follows:

"All stockholders of savings and state banks shall be individually liable to the creditors of such corporation of which they are stockholders over and above the amount of stock by them held therein and any amount paid thereon, to an amount equal to their respective shares, for all its liabilities accruing while they remained such stockholders."

It will be observed that the language of the Constitution is almost identical with the language of the statute, and that the obligation imposed on the stockholders by each is for liabilities of the bank *accruing* while they remained stockholders. The receiver argues that on account of the practical identity of the language we have but to ascertain the sense in which the Constitutional Convention used the language in the Constitution to ascertain its meaning in the statute. An examination of the proceedings of the Constitutional Convention leaves no doubt but what the convention intended to fasten upon the stockholders a liability for debts incurred while they were stockholders. If the provisions of the Constitution under consideration applied to savings banks, we think the language used in the statute should be given the same meaning as similar language used in the Constitution, but the provisions of the Constitution apply only to banks of issue, and do not apply to savings banks. Allen v. Clayton, 63 Iowa 11, 18 N. W. 663, 50 Am. Rep. 716. Savings banks are creatures of the legislature, and the liability of stockholders in savings banks is subject to the plenary power of the legislature. It lies within the power of the legislature to adopt a policy in relation to such liability other than that adopted in the Constitution in relation to the liability of stockholders in banks of issue.

Chapter 87 of the Acts of the 7th G. A. created the State Bank of Iowa. Section 42 of that act provided:

"Stockholders in branches, shall each be individually and severally liable to the creditors of the branch of which they are the stockholders, over and above the amount of stock by them held, to an amount equal to their respective shares so held for all its lia-

bilities, accruing while they remain stockholders and no transfer of stock shall effect such liability."

Chapter 114 of the Acts of the 7th G. A. provided for the formation of "free" banks. Section 30 of the chapter provided:

"Stockholders or shareholders in corporations organized under the provisions of this act shall be individually and severally liable to the creditors of the corporation of which they are stockholders or shareholders over and above the amount of stock by them held, to an amount equal to their respective shares so held, for all its liabilities accruing while they remained stockholders, and no transfer of stock shall affect such liability."

These acts were approved by the voters in June of the year 1858, as required by article 8, section 5, of the Constitution. The State Bank of Iowa and the "free" banks were banks of issue, and consequently the provisions of the Constitution, above referred to, in relation to the liability of stockholders, were applicable. But it is to be noted that the legislature went beyond the terms of the Constitution in each act and provided that "no transfer of such stock shall affect such liability." The acts creating the State Bank of Iowa and the "free" banks were repealed in their entirety by the 13th G. A. in 1870 (ch. 25). Chapter 60 of the Acts of the 15th G. A. provided for the creation of savings banks. This act was passed in 1874. Section 12 of this chapter provides:

"Shareholders in banks organized under the provisions of this act shall be individually and severally liable to the creditors of the corporation of which they are shareholders, over and above the amount of stock by them held, to an amount equal to their respective shares so held, for all its liabilities accruing while they remained shareholders, and no transfer of stock shall affect such liability for the period of six months thereafter."

It appears that corporations organized under the provisions of law in relation to corporations for pecuniary profit had engaged in the meantime in the banking business. The provisions of the statutes in relation to corporations for pecuniary profit were contained in chapter 1, of title 9 of the Code of 1873. By chapter 208, Laws of the 18th G. A., enacted in 1880, chapter 1 of title 9 of the Code of 1873 was amended by adding thereto several provisions, among which was the following:

"That all stockholders or shareholders in associations or corporations organized under said chapter one (1) aforesaid, for the purpose of transacting a banking business, buying or selling exchange, receiving deposits of money or discounting notes, shall be individually and severally liable to the creditors of such association or corporation of which they are stockholders or shareholders, over and above the amount of stock by them held therein, to an amount equal to their respective shares so held for all its liabilities accruing while they remained such stockholders."

By the provisions of chapter 72, Acts of the 21st G. A., banks organized under the general incorporation laws of the state were designated "state banks," and were required to have the word "State" incorporated in and made a part of the name of the corporation. The law remained substantially in this condition until the adoption of the Code of 1897, when the provisions in relation to savings banks were incorporated in chapter 10 of title 9 of that Code, the provisions in relation to state banks, in chapter 11, title 9, and general provisions in relation to both classes of banks, in chapter 12 of title 9. The provisions in relation to the liabilities of shareholders in savings banks found in section 12, chapter 60, Acts of the 15th G. A., and the provisions in relation to stockholders liability in banks incorporated under the general incorporation statutes, enacted in chapter 208, Acts of the 18th G. A., were carried into the Code of 1897 as section 1882 in chapter 12 of title 9. The provisions there found are as follows:

"All stockholders of savings and state banks shall be individually liable to the creditors of such corporation of which they are stockholders over and above the amount of stock by them held therein and any amount paid thereon, to an amount equal to their respective shares, for all its liabilities accruing while they remained such stockholders."

The provisions of section 1882 of the Code of 1897 were divided into sections 9251 to 9253, inclusive, of the Code of 1931. Merely to complete the story, it may be noted that by section 3 of chapter 156, Acts of the 45th G. A., stock in banks may be authorized under certain circumstances which is nonassessable.

The quest for assured solvency in banks has been pursued persistently and diligently. The attainment of the object of the search

would mean much to humanity. Three major economic upheavals have overtaken the state since, as a result of the panic of the late fifties, the constitutional provisions imposing liability on the stockholders of banks of issue were adopted. Each succeeding experience has apparently led the legislature to have less faith in the stockholder's liability as a remedy for a situation in which many borrow who do not repay because economic attrition has pursued every form of wealth, no matter how artfully it may have been guarded or concealed, until a substantial proportion of every item of it has been destroyed; for it was first provided that "no transfer of stock shall affect such liability," next that "no transfer of stock shall affect such liability for a period of six months thereafter," and now nothing is said concerning the effect of a transfer of stock, and in some circumstances stock may be issued which is nonassessable.

Still the word "accruing" has been used by the General Assembly in all acts under inquiry prior to the Acts of the 45th G. A., and the liability which has been fastened on the stockholders has been for liabilities *accruing* while they remained stockholders. The obligation imposed by the statute on stockholders is either for liabilities *incurred* while they remained stockholders, or for liabilities *maturing* while they remained stockholders. An examination of the various definitions of the word "accruing" does not enable us to say whether the statute means liabilities incurred or liabilities maturing while the stockholder remained such. When a time deposit is accepted, payable at a definite day in the future, an obligation to repay, when due, is created, and, in a sense, the liability to repay accrues when the deposit is taken. This view of the situation satisfies one definition of accrue, namely, "to vest as a right." But, when this situation is further examined, it is obvious that the depositor has no enforceable right to be repaid until the time for repayment, the due date of the certificate, arrives. In this aspect the situation does not satisfy another definition of "accrue," namely, "to come into existence as an *enforcible* claim." Ordinarily a change in the language of a statute indicates an intention to change its meaning. But the fact that the legislature has, at all times pertinent to the matter under consideration, retained upon the statute books the language, "For all its liabilities accruing while they remained stockholders," leads naturally to the conclusion that it did not intend to redefine the liabilities of the bank for which the stockholder was answerable. Originally this language undoubtedly

meant liabilities *incurred* while the stockholder owned stock, and it is our conclusion that such was the meaning of the statute at the time Hanssen was a stockholder.

In Andrew v. Commercial State Bank, 206 Iowa 1070, 221 N. W. 809, the precise question now under consideration was not before the court, but Mr. Justice De Graff, speaking for the court, said:

"The word 'accruing' found in the statute governing double liability must be construed to mean any liability within the purview of the statute existing while a stockholder remained a stockholder. Clearly any creditor of the bank had a right to look to all of the stockholders who were such at the time the debt existed and the bank became insolvent. The right to an assessment did not accrue until the bank became insolvent."

See, also, Andrew v. Peoples State Bank of Humboldt, 211 Iowa 649, 234 N. W. 542.

The record in this case indicates only that at the time the bank closed its doors there were outstanding and unpaid $175,200.74 of certificates of deposit which had been issued between the date Hanssen acquired his stock and the day when he parted with it. The record does not indicate that any of the outstanding certificates were renewals made subsequent to the time Hanssen parted with the stock. The facts before the court do not require a determination of the effect of a renewal of a certificate of deposit, after the stockholder parts with his stock, upon the liability of such stockholder, nor whether the liability of the successive owners of stock is several.

The decree and judgment of the trial court is affirmed.—Affirmed.

EVANS, ALBERT, KINDIG, and DONEGAN, JJ., concur.