## DANIELS v. THE STATE.

[No. 18,467.    Filed April 22, 1898.]

INTOXICATING LIQUORS—"*Quart Shop*" *Law—No Penalty Provided in Act.—Penalty Prescribed by General Statute.*—The act of March 8, 1897 (Acts 1897, p. 253), commonly known as the "Quart Shop" act, making unlawful the sale of liquors in less quantities than five gallons without a county license, is not rendered ineffective by its failure to prescribe a penalty for its violation, as the penalty is supplied by the general provision of section 2186, Burns' R. S. 1894. *pp. 350-358.*

STATUTORY CONSTRUCTION.—*Incomplete Statute.*—The rule that general statutes give way to special statutes upon the same subject, applies only when the special statute is complete within itself. *p. 363.*

SAME.—*Doing Business Without License.—Statute Applicable to Future Legislation.*—In section 2186, Burns' R. S. 1894, prescribing a penalty for the transaction of any business without a license when such license is required by law, the words of the statute are comprehensive, and apply as well to future as existing legislation. *p. 358.*

INTOXICATING LIQUORS.—"*Quart Shop*"· *Law.—Constitutional Law.* —Section 3 of the act of March 8, 1897, providing that "none of the provisions of the act shall apply to any person engaged in business as a wholesale dealer, who does not sell in less quantities than five gallons at a time," does not discriminate in favor of wholesale dealers, so as to violate section 1, article 14, of the federal constitution. *pp. 361-363.*

From the St. Joseph Circuit Court.    *Affirmed.*

*F. J. L. Meyer, D. W. Howe, Breen & Morris, A. G. Smith, C. A. Korbly, R. O. Hawkins and H. E. Smith,* for appellant.

*W. A. Ketcham,* Attorney-General, *T. W. Slick, John R. Wilson and Merrill Moores,* for State.

HACKNEY, J.—This was a prosecution against the defendant for having sold, without a license, one quart of beer on the 1st day of May, 1897. The prosecution, it is conceded, was for one of the offenses defined by the first section of the amendatory act of 1897, Acts 1897, p. 253.

That act amended sections one, five, and seven of the act approved March 17, 1875, being sections numbered 5312, 5316, 5318, of R. S. 1881, and sections numbered 7276, 7281, 7283, Burns' R. S. 1894.

Prior to the amendment it was made unlawful to sell intoxicating liquors, in less quantity than one quart at a time or in any quantity to be drunk upon the premises, without first procuring a license according to the provisions of said act of 1875. The penalty for the violation of said provisions was prescribed by section 12 of said act. Section 7285, Burns' R. S. 1894 (5320, R. S. 1881), which is as follows: "Any person, not being licensed according to the provisions of this act, who shall sell or barter, directly or indirectly, any spirituous, vinous, or malt liquors in a less quantity than a quart at a time, or who shall sell or barter any spirituous, vinous, or malt liquors to be drunk, or suffered to be drunk, in his house, out house, yard, garden, or the appurtenances thereto belonging, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not less than twenty dollars nor more than one hundred dollars, to which the court or jury trying the cause may add imprisonment in the county jail of not less than thirty days nor more than six months."

The amendatory act of 1897 prescribed no penalty, and its first section provides that, "It shall be unlawful for any person, directly or indirectly, to sell, barter or give away, for any purpose of gain, any spirituous, vinous, or malt liquors without first procuring from the board of commissioners of the county in which such liquor is to be sold, a license as hereinafter provided; nor shall any person, without having first procured such license, sell or barter any intoxicating liquor to be drunk, or suffered to be drunk, in his house, outhouse, yard, garden, or the appurtenances thereto belonging."

Section two prescribes the license fee required to be paid, and section three provides that upon the granting of a license, the payment of the fee, etc., the "Auditor shall issue a license to the applicant for the sale of such liquors as he applied for, with the privilege of permitting the same to be drunk on the premises * * * which license shall specify the name of the applicant, the place of sale, and the period of time for which such license is granted: *Provided*, That none of the provisions of this act shall apply to any person engaged in business as a wholesale dealer, who does not sell in less quantities than (5) gallons at a time."

It is manifest that the provisions of the old act have been so amended as to make unlawful all sales of intoxicating liquors, made without a license, regardless of quantity, saving and excepting no class other than those mentioned in the proviso just quoted, namely: Those wholesale dealers who do not sell in less quantities than five gallons at a time. It is manifest, also, that the penalty section of the act of 1875, quoted above, does not apply to sales where the quantity sold is not less than one quart at a time. In other words, the sale charged in this case, one quart, does not fall within the penalty prescribed by said section 7285, Burns' R. S. 1894, the penalty there prescribed being for sales in less quantities than one quart at a time, or sales of liquor to be drunk upon the premises. We are not to consider, in this case, the effect of section 7285, *supra*, upon sales of quantities of less than one quart at a time.

One objection here pressed is that no penalty is prescribed for the sale charged in this case, and this is certainly correct, so far as the last mentioned section is concerned.

On behalf of the appellee, however, it is contended

that section 2186, Burns' R. S. 1894 (2090, R. S. 1881), prescribes the penalty applicable to the offense charged against the appellant. That section, enacted in 1881 as a part of the chapter (5) defining crimes and prescribing punishments, is as follows: "Whoever, by himself or agent, transacts any business or does any act without a license therefor, when such license is required by any law of this State, shall be fined not more than two hundred dollars nor less than five dollars."

Against this contention counsel for appellant insist, (1) that this section cannot be extended to offenses which did not exist when it was enacted; (2) that there being a special statute upon the subject, namely, the act of 1875, as amended in 1897, the general provision, that of section 2090, must give way to the special provision, and, (3) that the legislative expression, by the act of 1875, and the amendment thereof in 1897, included such violations as were deemed subject to penalties, and, that, under the rule that the expression of one thing excludes all others, excluded all penalties not specifically provided.

To the first of these propositions are cited by counsel for the appellant *Reg.* v. *Smith,* L. R. 1 Crown Cas. 266; *Commonwealth* v. *Wells,* 110 Pa. St. 463; *Commonwealth* v. *Erie, etc., R. R. Co.,* 27 Pa. St. 339, 67 Am. Dec. 471; *Hall* v. *State,* 20 Ohio 8; *United States* v. *Paul,* 6 Peters 141.

The case of *United States* v. *Paul, supra,* involved an act of congress expressly incorporating state legislation of a penal character, and was held not to apply to subsequent legislation of the state of the same general character as that so incorporated. There are many like cases, and the holding must be sound, upon the theory that congress will not blindly enact future legislation of a state, and will, at most, but adopt

existing legislation. In *Hall* v. *State, supra,* it is broadly stated as a rule of construction, that "a statute referring to, or affecting persons, places or things, is limited in its operations, to persons, places or things, as they existed at the time the statute was passed." Such a rule of construction would be so narrow as to limit the operation of statutes to persons born before their enactment, and to places or things falling within its classification prior to and at the time of their enactment. The case of *Commonwealth* v. *Erie, etc., R. R. Co., supra,* we do not regard as in point. All of these cases depend upon the severest enforcement of the rule of strict construction, and some of them we regard as in conflict, not only with the weight of authority, but with the greater weight of reason.

The rule of strict construction as first introduced and applied for many years, has in modern times been undergoing modifications which look to the intention of the lawmaker instead of requiring perfect precision. As is said in Hardcastle on Construction of Statutes, p. 250, " 'A hundred years ago,' said the court in *Lyon's Case,* Bell's C. C., 45, 'Statutes were required to be perfectly precise, and resort was not had to a reasonable construction of the act, and thereby criminals were often allowed to escape. This is not the present mode of construing acts of Parliament. They are construed now with reference to the true meaning and real intention of the legislature.' Therefore, 'although the common distinction,' as Pollock, C. B., said in *Nicholson* v. *Fields,* 31 L. J. Ex. 235, 'taken between penal acts and remedial acts, that the former are to be construed strictly, and the others are to be construed liberally, is not a distinction, perhaps, that ought to be erased from the mind of a judge,' yet the distinction now means little more than 'that penal

provisions, like all others, are to be fairly construed according to the legislative intent as expressed in the enactment, the courts refusing on the one hand to extend the punishment to cases which are not clearly embraced in them, and on the other equally refusing by any mere verbal nicety, forced construction, or equitable interpretation to exonerate parties plainly within their scope.'" Continuing, the author says, "This was clearly pointed out by the judicial committee in *The Gauntlet*, L. R. 4 P. C. 191. 'No doubt,' said they, 'all penal statutes are to be construed strictly, that is to say, the court must see that the thing charged as an offense is within the plain meaning of the words used, and the court must not strain the words on any notion that there has been a slip, or a *casus omissus*, or that the thing is so clearly within the mischief that it must have been intended to be included, and would have been included if thought of. On the other hand the person charged has a right to say that the thing charged, although within the words, is not within the spirit of the enactment. But where the thing is brought within the words and within the spirit, there a penal enactment is to be construed like any other instrument according to the fair common-sense meaning of the language used, and the court is not to find or make any doubt or ambiguity in the language of a penal statute, where such doubt or ambiguity would clearly not be found or made in the same language in any other instrument.'

" 'It is not true,' said Buller, J., in *Rex* v. *Hodnett*, 1. T. R. 101, 'that the court in the exposition of penal statutes are to narrow the construction. We are to look to the words in the first instance, and, where they are plain, we are to decide on them.' Consequently, 'when large enough words are used,' a prohibition

may be extended so as to apply to something which has come into existence since the passing of the act. Thus in *Graves* v. *Ashford*, L. R. 2 C. P. 410, it was held that the piracy of a picture by means of photography is within the statutes of Geo. II and Geo. III, which were passed for the protection of artists and engravers, although photography was not a known art at the time those statutes were passed."

The authorities which we regard as in conflict with this contention of counsel are *State* v. *Kidd*, 74 Ind. 554; *Mercer* v. *Corbin*, 117 Ind. 450, 10 Am. St. 76. *State* v. *Buskirk*, 18 Ind. App. 629; *United States* v. *Nihols*, 27 Fed. Cas. No. 15,880; *United States* v. *Barton*, 24 Fed. Cas. No. 14,534; *State* v. *Hays*, 78 Mo. 600; *Campbell* v. *People*, 8 Wend. 636; *State* v. *Becton*, 7 Baxter 138; *Graves* v. *Ashford*, *supra*; *Gambart* v. *Ball*, 14 C. B. (N. S.) 306; *Taylor* v. *Goodwin*, 4 Q. B. Div. 228; *Collier* v. *Worth*, L. R. 1 Exch. 464; *Attorney-General* v. *Saggers*, 1 Price 182; *Williams* v. *Drewe*, Willes 392; *In re Lloyd*, 51 Kan. 501, 33 Pac. 307; Hardcastle on Statutes, *supra* (2d ed.), p. 252; Maxwell on Interpretation of Statutes (2d ed.), p. 93.

The last named author makes this statement: "Except in some few cases where a statute has fallen under the principle of excessively strict construction, the language of a statute is generally extended to new things which were not known and could not have been contemplated by the legislature when it was passed. This occurs when the act deals with a genus, and the thing which afterwards comes into existence is a species of it. Thus, the provision of Magna Charta which exempts lords from the liability of having their carts taken for carriage was held to extend to degrees of nobility not known when it was made, as dukes, marquises, and viscounts. The 17 Geo. 2 (A. D. 1744), which gave parishioners the right of inspecting the

accounts of church-wardens and overseers under the poor law of Elizabeth, was held to extend to those of guardians, officers who were created by Gilbert's Act (22 Geo. 3), passed in 1783. The 13 Eliz. c. 5, which made void, as against creditors, transfers of lands, goods, and chattels, did not originally apply to copyholds or choses in action, as these were not seizable in execution; but when they were made subject to be so taken (1 and 2 Vict. c. 110), they fell within the operation of the act. The Act of Geo. 2, which protects copyright in engravings by a penalty for piratically engraving, etching, or otherwise, or 'in any other manner' copying them, extends to copies taken by the recent invention of photography." The author cites some cases already cited by us, and many others.

In *State* v. *Hays, supra,* it was held that a township trustee, holding his office under an act for the creation of townships, was subject to criminal prosecution under a prior statute defining the crime of embezzlement by public officers, and prescribing punishment therefor.

In *Taylor* v. *Goodwin, supra,* an old statute forbade the driving of "any sort of carriage  *  *  *  furiously, so as to injure life or limb of any passenger," and it was held that one riding a bicycle furiously upon the highway was subject to the penalties of the statute, although bicycles were unknown at the time the statute was enacted.

*In re Lloyd, supra,* a general statute of 1868 made attempts to commit offenses punishable. At that time the age of consent was ten years. In 1887 the age of consent was made eighteen years, and it was held, criticising the cases of *Hall* v. *State, supra,* and *United States* v. *Paul, supra,* that the earlier statute applied, notwithstanding the later change in the age of consent.

*United States* v. *Nihols, supra,* was a prosecution for perjury under sections 1 and 7 of the bankrupt law of 1841. At that time an act of 1825 was in force, defining perjury and prescribing a penalty. It was insisted that the act of 1825 did not govern cases of false swearing under the subsequent act. The court said, "The act of 1825 is an act defining the crime of perjury generally; and is not confined in its operation to acts passed anterior to that time, but is applicable to false swearing under the bankrupt law, as well as in other cases. The bankrupt law must be construed with the act of 1825, as in *pari materia.*"

Our own case of *State* v. *Kidd, supra,* involved a question directly analogous to that here under consideration. An act of 1877 made it unlawful to sell liquors "upon the day of any State, county, township, primary or municipal election." An act of 1879 provided that town trustees contemplating the building of water-works should submit the question to the voters of the town at a special or general election. It was held that a sale of liquor upon the day of an election as to the building of water-works was punishable under the act of 1877. The court, speaking by Woods, J., said: "It may be noted that the law authorizing the holding of such an election was not enacted until two years after the passage of the law under which the prosecution was instituted, and on this fact it may have been held that the law defining the offense should be construed to include only such election days as were then known to the law, and that the act providing for new elections could not enlarge the scope of a criminal statute theretofore enacted. This argument, if admitted, proves too much. The times for holding elections have been, and doubtless will be frequently changed, but it has not been deemed necessary on that account to change or re-

enact the penal or criminal statutes which relate thereto. The general terms of these statutes are such as to preserve their force and applicability notwithstanding the changes made in other laws. The language of the law under consideration is as general and comprehensive as it could well have been made, and may as well apply to elections since provided for as to those which were authorized by the laws existing at the time of its passage, and to elections concerning water-works proposed to be erected in the municipality as to an election of municipal officers."

In the case of *Mercer* v. *Corbin, supra,* the act of 1859 (Acts 1859, p. 185), making it "unlawful for any person to ride or drive upon a brick, stone, plank, or gravel sidewalk in any town or village," and declaring it a misdemeanor punishable by fine, it was held that a bicycle must be regarded as a vehicle within the meaning of that statute. While not directly discussed, it is a matter of common knowledge that the bicycle was not in use at the time of the enactment of the statute, and the conclusion reached by the court could be supported only upon the theory that the act was intended to comprehend, not only existing vehicles, but such as might thereafter be known, and come into use.

Another rule of construction which leads strongly to the conclusion that section 2090, *supra,* supplies the penalty for the sale charged in this case, is that "statutes which are not inconsistent with one another and which relate to the same subject-matter, are in *pari materia,* and should be construed together and effect be given to them all, although they contain no reference to one another and were passed at different times." 23 Am. and Eng. Ency. of Law, p. 311, and the many authorities there cited. It is perhaps true that this rule of construction does not apply to a special statute, which is complete and comprehends the whole

subject to which it is directed. *Harold* v. *State*, 16 Texas App. 157. But we are here dealing with a statute, which, though special, is not complete within itself. It may be here said that the rule insisted upon by counsel for the appellant, that general statutes give way to special statutes upon the same subject, applies also only when the special statute is complete within itself.

ı The rule that statutes, when *pari materia* should be construed together, suggests that we should look into the body of the law, and where it may be ascertained that some part of the law is ineffective without considering some other part thereof, we should look to such other part for the purpose of giving effect to the whole, as well as to ascertain the legislative intention. Legislative intention, as is well understood, is the first principle of statutory construction, and if any interpretation and construction can be reasonably made which will save an enactment of the legislature from a barren and meaningless purpose, it should be accepted. The courts have no power, of course, to supply omissions, or add to the clearly expressed terms of a statute, as, if section 2090, *supra*, were not in the statute, the courts could not save the act of 1897 from the charge of omitting a penalty. The act of 1897, the act of 1875 and the act of 1881 relate to licenses, and are a part of the body of the criminal laws of the State. The new requirement of a license is but an added species, and is not a departure from the genus or general subject of legislation comprehended within the three acts. The penalty section from the act of 1881 (section 2090, *supra*), contains no words indicating an intention to apply its provisions only to existing enactments. Its words are "when such license is required by any law of the State." These words are large and comprehensive, and apply as well to future as existing requirements.

In the case of *Hoagland* v. *State*, 17 Ind. 488, as to the application of present legislation to future legislation, we have a construction upon the character of the words employed, as indicating the intention of the legislature. There such words were found too narrow to include future legislation, but it was indicated that larger words would include such future legislation.

To the second proposition of appellant are cited *Keiser* v. *State*, 78 Ind. 430, and *Walter* v. *State*, 105 Ind. 589. These cases hold that section 2090, being a general provision, does not repeal the special penalty section of the act of 1875, and in this respect are not at variance with the general rule already stated, that a general provision will yield to a special statute, complete and fully covering a specific question. We are now dealing with a question, however, in which the special statute is not full and complete, but omits the very element upon which we are to determine if the general statute applies. It is true that it was said in *Walter* v. *State*, *supra*, that section 2090 "ought to be construed as having reference to classes of business other than the sale of intoxicating liquors." That statement was clearly correct, upon the assumption that the subject of licenses for the sale of intoxicating liquors, and the penalties prescribed therefor, was covered by the act of 1875. In the case of *Keiser* v. *State*, *supra*, it was said that section 2090 should "be construed as applying to any transaction, business or trade, for which the law requires a license, without providing a special penalty for failing to obtain it." This statement, while not directed specifically to the question of past or future legislation, applies as well to requirements concerning liquor licenses as for any other purpose. Further than this we regard the two

cases mentioned as of no force upon the question here under consideration.

In order to consider further questions presented, it becomes necessary to determine the classes of persons to whom the body of the liquor laws of the State now apply. There has been no time when the laws of the State attempted to regulate the traffic as between the manufacturer, the wholesale dealer or the jobber, and the retail dealer. All legislation has been directed to restricting and controlling sales to the consumer and, until the act of 1897, has applied only to the retail dealer, or to one selling in quantities less than one quart at a time. Considering all existing legislation upon the subject, including the act of 1875, the Nicholson law, and the act of 1897, we find nothing changing the general trend and object of the legislation of the State upon the subject. The license now required and issued is not only with reference to sales to consumers, but every holder thereof may sell for consumption at the time and place of sale. Provisions as to notice of application for license, as to location of room, regulations as to screens, etc., all disclose an intention to restrict the trade with consumers and to detect unauthorized sales to them. The license features of existing laws have not even a remote application to sales by the brewer, distiller, or the wholesale dealer to the retail dealer. If they did apply, the brewer, before selling and delivering less than five gallons of beer or ale to the saloon-keeper, would be required to procure a license authorizing him to sell beer or ale by the drink for consumption upon the premises, and would be subject to all of the restrictions with reference to location of business, screens, etc., as applied to the saloon. The same would be true with reference to distillers and others who make sales to retail dealers. The scope of our laws upon

Daniels *v.* The State.

the subject, we have no doubt, includes only such dealers as sell to consumers, and must be construed with reference to such class or classes.   If the brewer, the distiller, the druggist, or the wholesale dealer, selling less than five gallons at a time, desires to sell to the consumer, he must procure a license just as the retail dealer, the "quart shop" or the "jug house" is required to do.

The argument against the injustice of requiring the same steps to procure a license, the payment of the same license fee, etc., that the saloon-keeper is required to take or pay, should have some force if made to the General Assembly, for we feel that the interests of the liquor trade and the cause of temperance should recognize a distinction between the licensing and regulating of the saloon and the drug store or the dealer who sells for home consumption.   It is probably detrimental to the cause of temperance to require the druggist to convert his business into a saloon at which sales by the drink may be made, before he may sell a quart or more of beer, wine, or whisky to be carried to the home of the consumer for use as he may desire it.   But this argument is not of value when addressed to the courts, since it does not involve the validity of the law and relates alone to the wisdom or propriety of the legislation, subjects over which the courts have no control.

It is said that section 1, article 14, of the constitution of the United States is violated by section one of the act of 1895 (Acts 1895, p. 248), in discriminating "against wholesale dealers, corporations and druggists" who may not enjoy on the same terms privileges granted to saloon-keepers.

Section one of the act referred to relates to the description which an applicant for license shall give of the location and room wherein he desires to sell, and

contains the proviso "that no license shall be granted to any other than a male person over the age of twenty-one years, and one who shall at the time be of good moral character, and provided further, that no such person shall be deemed to be of good moral character if within two years of the time when such application is made he shall have been adjudged guilty the second time of violating any of the provisions of this act."

If this proviso is discriminating, there is nothing in the record disclosing that such discrimination affects the appellant as a "wholesale dealer," "corporation," or "druggist." Its discrimination is as to sex, age, and moral character, neither of which appears to have prevented the appellant from enjoying the same privileges of a license on the same terms granted to any saloon-keeper. Counsel certainly misapprehend the force of the provision quoted.

Section three of the act of 1897 is attacked also as violating the same section and article of the federal constitution, in that it provides that none of the provisions of the "Act shall apply to any person engaged in business as a wholesale dealer, who does not sell in less quantities than five (5) gallons at a time" and thereby discriminates in favor of wholesale dealers, who are permitted to make sales without a license, while a retail dealer is not permitted to make a like sale without a license. This is said to be an arbitrary and unreasonable classification, while it is conceded that a reasonable classification is proper.

As we have construed the law, everyone who desires to sell to consumers must take out the license required, unless he shall desire to sell in quantities of five gallons or more, in which event no license is required. As between those who can have a license there is no opportunity for discrimination. Whether he is a druggist, a brewer, distiller, or other manu-

facturer or dealer, if he sells in quantities of five gallons or more he is a wholesale dealer, and if he sells to consumers, in quantities less than five gallons at a time, he is required to take out a license.

The only discrimination, therefore, is as to the person who is permitted to obtain a license. Nothing in the record suggests even a presumption that the appellant could not obtain, upon equal terms with anyone, a license to sell at retail, or in quantities less than five gallons, such as he is here charged with making. As held in *Wagner* v. *Town of Garrett,* 118 Ind. 114, the appellant may not complain that he can enjoy privileges which others cannot enjoy.

However, we have no doubt that the concession of the appellant that the legislature may make a reasonable classification is correct. The sale of intoxicants has always been held subject to control by the police power of the State. The police power belongs to the State, and not to the federal government. In its exercise the State may make such regulations as will promote the health, morals, and good order of society. Questions of sex, age, and moral fitness as applied to the traffic have always been regarded as proper subjects of legislative control, and, if the appellant could complain that corporations were not permitted to take out a license, we may suggest, without deciding, that it is not an unreasonable restriction which requires that the holder of a license to conduct a business fraught with so many dangers shall be one subject to the processes of the law and the enforcement of criminal punishment, one whose identity may not be so confused with that of his associates in business as to make it difficult, if not often impossible, to detect abuses, and visit the prescribed punishment upon the offender. The judgment of the lower court is affirmed.