STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, V. CITIZENS STATE BANK OF ROYAL, APPELLEE AND CROSS-APPELLEE: C. B. PUNTENAY ET AL., INTERVENERS, APPELLEES AND CROSS-APPELLANTS: AMERICAN STATE BANK OF NEWCASTLE ET AL., INTERVENERS, APPELLANTS AND CROSS-APPELLEES.

FILED APRIL 11, 1929. No. 26774.

*Fred S. Berry* and *Charles H. Kelsey*, for Citizens State Bank.

*Webb Rice, Ralph M. Kryger, Mapes, McDuffee & Mapes* and *Courtright, Sidner, Lee & Gunderson*, for Puntenay and Beck.

*C. M. Skiles* and *Perry, Van Pelt & Marti*, for American State Bank and Guaranty Fund.

Heard before Goss, C. J., Dean, Good, Thompson and Eberly, JJ., and Redick, District Judge.

Good, J.

The problem for solution presented by this appeal is the proper distribution of a fund arising from the enforcement of the constitutional double liability of stockholders of an insolvent state bank.

Citizens State Bank of Royal became insolvent, and in receivership proceedings its affairs have been wound up and its assets distributed. The claims of depositors have been paid from the depositors' guaranty fund. The assets of the bank were insufficient, by the amount of more than $19,000, to reimburse the guaranty fund. There are allowed and unpaid claims of general creditors in excess

of $17,000. The receiver now has in his hands a fund arising from the enforcement of the double liability of stockholders, as provided by section 7, art. XII, of the Constitution of Nebraska. He filed a petition in the receivership proceedings, setting forth all the facts and praying for an order directing the proper distribution of the fund.

The department of trade and commerce of Nebraska and the guaranty fund commission of Nebraska (hereinafter referred to as the department and the commission, respectively) intervened and set up the facts relative to the payment of claims of depositors from the guaranty fund, and that the fund in the hands of the receiver was insufficient to fully reimburse the guaranty fund, and prayed that the court decree that the department, for the benefit of the guaranty fund, have a first lien and claim upon all funds in the hands of the receiver, realized from the collection of liability of stockholders of the bank, and that the general creditors have no right or interest therein.

American State Bank of Newcastle, Nebraska, also intervened, setting forth that it was a contributor to the guaranty fund, and joined in the prayer of the petition of the department and the commission. General creditors of the failed bank also intervened and set forth the facts of the allowance of their claims; that they were unpaid and in amounts exceeding the fund in the hands of the receiver, and praying that said fund be distributed *pro rata* among the general creditors, and that the department and the commission, representing the depositors' guaranty fund, be excluded from any participation in such distribution. No question is raised as to when any of the claims accrued.

All of the facts were stipulated. The trial court found and determined that the fund in the hands of the receiver was for the benefit of all the unpaid creditors of the bank; that the department and the commission, representing the depositors' guaranty fund, were, to the extent that the fund had not been reimbursed, subrogated to the rights

of depositors and were entitled to share *pro rata* with the general creditors in the distribution of the fund. The department, the commission and American State Bank have appealed, and the general creditors have filed a cross-appeal.

The fund, in question, in possession of the receiver is about $7,000, and is insufficient to either fully reimburse the guaranty fund or pay in full the allowed claims of general creditors. If either is entitled to a preference, then nothing remains for the other. The appellants base their claim to a preference on sections 8033 and 8035, Comp. St. 1922, and cross-appellants base their claim to preference on section 7, art. XII, of the Constitution.

The constitutional provision, so far as applicable to this case, is as follows: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors over and above the amount of stock by him held to an amount equal to his respective stock or shares so held, for all its liabilities accruing while he remains such stockholder," etc. Const., art. XII, sec. 7.

Section 8033, Comp. St. 1922, as amended by section 12, ch. 30, Laws 1925 (hereinafter referred to as section 8033), so far as applicable, is as follows: "The claims of depositors, for deposits, not otherwise secured, and claims of holders of exchange, shall have priority over all other claims, except federal, state, county and municipal taxes, and subject to such taxes, shall at the time of the closing of a bank be a first lien on all the assets of the banking corporation from which they are due and thus under receivership, including the liability of stockholders, and, upon proof thereof, they shall be paid immediately out of the available cash in the hands of the receiver. If the cash in the hands of the receiver, available for such purposes, be insufficient to pay the claims of depositors whose deposits are not otherwise secured, and holders of exchange, not given for a previously existing debt of the bank other than a deposit, the court in which the receivership is pending, or a judge thereof, upon the hearing shall

determine the amount required to supply the deficiency and cause the same to be certified to the department of trade and commerce, which shall thereupon draw against the depositors' guaranty fund in the amount required to supply such deficiency and shall forthwith transmit the same to the receiver, to be applied on the said claims of unsecured depositors and holders of such exchange."

Section 8035, Comp. St. 1922, so far as applicable, is as follows: "To the extent of the amount paid from said guaranty fund to satisfy the claims of creditors, the department of trade and commerce for the use and benefit of said fund, shall be subrogated to all the right of the creditors thus paid, to participate in the assets of such bank, and the same shall be enforced and collected by the receiver."

It has been judicially determined that section 7, art. XII, of the Constitution, is self-executing; that no act of the legislature is necessary for the enforcement of its provisions, and that the liability thereby created is free from legislative interference.

In *Bodie v. Pollock*, 110 Neb. 844, it was held: "Sections 4 and 7, art. XII, of the Constitution, are self-executing when considered together, as they have been and should be; and, so considered, they form a complete constitutional rule to the effect that, while stockholders in banks are subject to the double liability set out in said sections, such liability cannot be enforced until the property of the bank has been exhausted, and the amount justly due judicially determined." The same rule was announced in *Farmers Loan & Trust Co. v. Funk*, 49 Neb. 353, and in *State v. German Savings Bank*, 50 Neb. 734. In the latter case, in the opinion it was said (p. 738): "It will be observed at once that the general effect of these two provisions is to establish a liability, free from interference by the legislature, on stockholders of all corporations, subject to certain conditions, for their unpaid subscriptions; and in the case of banking corporations, an additional liability for a further amount equal to the amount of stock held

by any person for the purpose of paying debts incurred while such person is a stockholder." In that case, it was further held that a banking act which purported to authorize a receiver to collect unpaid subscriptions upon a report that, in his opinion, the assets of the bank were insufficient to pay its liabilities was in conflict with section 4, art. XII, of the Constitution.

It will thus be seen that the rule is established that the provisions of the Constitution, contained in said section 7, may not be limited or extended by legislative act. It follows that whatever rights are given by this constitutional provision to the creditors of a state bank remain unaffected and unhampered by any legislative act. The liability so created against stockholders in favor of all creditors of the bank cannot be divested or taken from them. The liability of the stockholder to the creditors of such bank for claims accruing while he was such stockholder becomes and is a security to such creditors, and the legislature may not, by any act, relieve such stockholder of the liability so created. If the contention made by the general creditors should prevail, it would result in this anomalous situation: If there were no general creditors of the bank and the only creditors of the bank were the depositors, and because the depositors were first paid from the depositors' guaranty fund, all stockholders would be relieved of this constitutional liability.

Counsel for the general creditors contend that they are the only unpaid creditors, since the claims of depositors have been satisfied from the bank's assets and the guaranty fund, and, further, that the department is not subrogated to the claims of depositors who have been paid from the guaranty fund. To sustain this contention they cite and rely upon the decisions of this court in *Rogers v. National Surety Co.*, 116 Neb. 170, and *Cleary v. Fidelity & Deposit Co.*, 117 Neb. 478.

In *Rogers v. National Surety Co., supra,* it was held: "Section 8035, Comp. St. 1922, construed, and *held* to limit by express terms the subrogation therein provided for the

benefit of the depositors' guaranty fund, upon payment made to creditors, to 'all the right of the creditors thus paid, to participate in the assets of such bank.' " In that case two questions were presented for determination: First, was the obligor on a bond, given to a county to indemnify it from any loss by reason of a deposit made by it in a state bank, a cosurety with the guaranty fund, and liable as such for contribution to the depositors' guaranty fund? The other question has no application to the matters in hand. The decision in that case went no further than to determine the extent of the statutory subrogation provided in section 8035. It was limited to the subrogation "therein provided."

In *Cleary v. Fidelity & Deposit Co., supra,* it was held: "The only statutory subrogation authorized to augment or replenish the depositors' guaranty fund is that provided by section 8035, Comp. St. 1922, and the subrogation therein provided is limited to the assets of the bank." The language used indicates that it was carefully chosen for the purpose of limiting the holding to the statutory subrogation, and not to determine whether there might be an equitable subrogation, aside from any statutory provision.

The rules announced in the cases above discussed do not go to the extent of determining whether the department, upon the payment of claims of depositors, may be subrogated in equity to the rights of such depositors against the stockholders for the liability created by section 7, art. XII, of the Constitution.

The doctrine of equitable subrogation did not originate in statute or custom, but was invented by equity courts for the purpose of doing full and complete justice between the parties, without much regard to legal forms. Originally, the right of subrogation was limited to transactions between principals and sureties, but courts of equity have expanded the doctrine so that now it will be applied where one, not acting voluntarily, pays the debt for which another is primarily liable, and which, in equity and good conscience, the latter should have discharged. The doctrine

will be applied in all cases where demanded by the dictates of equity, good conscience and public policy. No inflexible rule for its application can be laid down, but there are four classes of cases to which the doctrine will be generally applied. Two of these classes only need be mentioned, one of which is where one pays the debt of another in the performance of a legal duty imposed by contract or the rules of law, and another where one pays the debt of another on the invitation of the public, and whose payment is favored by public policy. *Eaton v. Hasty,* 6 Neb. 419; *Frederick v. Gehling,* 92 Neb. 204; 25 R. C. L. 1313, sec. 2; 1314, sec. 4; 1322, sec. 10; 37 Cyc. 363, 370.

The department was compelled by law to pay from the guaranty fund the claims of depositors. Under the equitable principles above announced and discussed, immediately upon such payment, the department became subrogated to the rights of depositors whose claims it had paid. By reason of such subrogation, the department was entitled to share in the fund in the hands of the receiver.

We will now consider the contention of the appellants that under the provisions of sections 8033 and 8035, Comp. St. 1922, the department has a first lien on all the assets of the bank, including the liability of stockholders, and is entitled to the whole of the fund now in the receiver's hands.

Section 7, art. XII, of the Constitution, creates a liability in favor of all the creditors of the bank. Nowhere in the Constitution is an attempt made to classify creditors so as to give one creditor or class of creditors a preference over others. As heretofore pointed out, this constitutional provision is self-executing and creates a liability free from interference by the legislature, so that if the sections of the statute above mentioned should be construed to sustain the contention of appellants they would violate the constitutional provision and for that reason be invalid. However, we do not think that these sections of the statute should be so construed.

It is a well-recognized rule that if a statute is susceptible

of two or more constructions, one of which would be constitutional and the other unconstitutional, the former is to be preferred. The meaning, intended by the legislature, of the words, "including the liability of stockholders," as used in section 8033, is not free from doubt. The language may have been intended to refer to the liability of stockholders for unpaid subscriptions. An unpaid subscription of a stockholder is an asset of the bank, and if this meaning was intended then the lien provided for in said section would attach to this liability of the stockholder, as the lien granted is upon all the assets of the bank. The legislature may have intended the language used to refer to the constitutional double liability of stockholders, and intended to cover only such part of this liability as inured to the benefit of depositors. If the latter was the intention, the statute in this respect was nothing more than declaratory of the constitutional provision. We are persuaded that this was the intended meaning. Section 8035 does not attempt to subrogate the department to anything except the rights of depositors and holders of exchange, paid from the guaranty fund, to a preference in the distribution of the assets of the bank.

Our attention has been called to the rule announced in the sixth paragraph of the syllabus in *State v. Farmers State Bank,* 103 Neb. 194, wherein it was held, in substance, that the state banking board, for the use and benefit of the guaranty fund, was subrogated to the rights of depositors to participate in the assets of the bank, and that the banking board became a general creditor and was entitled to prorate with other nonpreferred creditors in the bank's assets. The rule there announced was applied in *State v. Farmers State Bank,* 106 Neb. 387, for the reason only that it had become the law of that case. In the latter opinion it was clearly recognized that an error had been committed in the rule announced in the first opinion. The rule announced in the sixth paragraph of the syllabus in *State v. Farmers State Bank,* 103 Neb. 194, is now express-

ly disapproved and is no longer to be considered an authority.

We are of the view that section 8033, when properly construed, does not give to depositors a lien on anything except the assets of the bank. Since the fund arising from the enforcement of the constitutional double liability of bank stockholders is not an asset of the bank, it follows that the depositors, as such, have no lien thereon. But the double liability of stockholders is a security for all creditors of the bank. The term "creditors" includes depositors.

Section 8033, as we interpret it, is not in conflict with section 7, art. XII, of the Constitution. The general creditors and the department, by reason of the latter being subrogated to the right of depositors and holders of exchange, are entitled to share ratably in the fund in the receiver's possession.

The judgment of the district court is based on sound principles of law and equity, and is

AFFIRMED.