## GAISER *v.* BUCK.*

[No. 25,701.   Filed December 11, 1930.   Modified opinion filed
and rehearing denied November 20, 1931.]

* Reported and annotated in 82 A. L. R. 1348.

Charles E. Sturgis, Robert W. Stine and Elmore D. Sturgis, for appellant.

E. C. Vaughn, Simmons, Daily & Simmons, Eich-

horn, *Gordon & Edris* and *Fred A. Wiecking,* for appellee.

*Jones, Hammond & Bushmann, Williams & Murphy* and *Frank G. Davidson,* for *amicus curiae,* The Indiana Bankers Association, supporting appellant.

*Charles M. McCabe* and *C. W. Dice,* for *amici curiae* stockholders Farmers-Merchants State Bank, Attica; *Stuart, Simms & Stuart,* for *amici curiae,* stockholders, Williamsport State Bank, Williamsport; *John C. Chaney,* for *amici curiae,* stockholders, Citizens Trust Company, Sullivan; *W. J. Sprow, Clyde H. Jones* and *Slaymaker, Merrill, Ward & Locke,* for *amici curiae,* stockholders, Crawfordsville State Bank, Crawfordsville; *Noel, Hickam, Boyd & Armstrong,* and *Smith, Remster, Hornbrook & Smith,* for *amici curiae,* stockholders, J. F. Wild & Co. State Bank, Indianapolis, all supporting appellee.

*James M. Ogden,* Attorney-General, *V. Ed Funk,* Deputy Attorney-General, for *amicus curiae,* Luther F. Symons, Bank Commissioner of Indiana, on petition for rehearing, supporting the decision.

*William J. Whinery, amicus curiae, pro se,* on petition for rehearing, supporting appellee.

MARTIN, C. J.—The appellant, a general creditor (in the sum of $323.70) of the Studabaker (state) Bank of Bluffton, brought this action June 24, 1927, on behalf of herself and all other creditors similarly situated (it being alleged that there are more than 1,000 creditors and that it is impracticable to bring them all before the court), against the stockholders of the bank to recover from them the double liability imposed by §6, Art. 11, Constitution, §212 Burns 1926, and §13, ch. 8, Acts 1873, as amended by §1, ch. 230, Acts 1919, §3858 Burns 1926, upon stockholders in banks. The complaint alleged that said bank was incorporated as a bank of

discount and deposit September 23, 1923 (under §3849 *et seq.* Burns 1926), with a capital stock of $200,000, all of which was paid for, and continued to do a general banking business until March 26, 1927, at which time it was closed by order of the State Bank Commissioner; that the bank was insolvent, and on May 20, 1927, a receiver was appointed for it, who proceeded with its liquidation; that its liabilities amounted to $1,563,315, and its assets to $1,348,532 (the assets, plus the full amount of the stockholder's additional or double liability, not being sufficient to equal the liabilities). It is alleged that other creditors are threatening to prosecute separate suits against individual stockholders to enforce such personal liability; that such separate litigation will waste the proceeds of such liability; and that it will be to the best interests of all creditors and stockholders that such creditors be enjoined from prosecuting separate suits, etc. The prayer was for judgment against each defendant in the amount of their liability as set out in the complaint, that the liabilities of the defendants be proportioned among them in proportion to the amount of stock owned by them respectively, that individual creditors be enjoined from prosecuting separate suits against the stockholders, and that a receiver be appointed to collect the amount found due from the defendants.

The appellee, a defendant stockholder, filed a demurrer to this complaint, on the ground that the complaint did not state facts sufficient to constitute a cause of action. This demurrer was sustained by the trial court, and, upon the refusal of appellant, plaintiff, to plead over, the court rendered judgment on the demurrer in appellee's favor for costs. The action of the court in sustaining the demurrer is assigned as error.

This action by a depositing creditor of the bank is properly brought on behalf of herself and others simi-

larly situated. Section 277 Burns 1926, provides that "when the question is one of a common or general interest of many persons, or where the parties are numerous and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole."

The action is not prematurely brought. When the bank was adjudged insolvent, its liabilities to its creditors were presently due. It was unnecessary to wait until all claims were reduced to judgments before bringing this action. Such facts, regarding the solvency of the bank, are alleged so as to show that the entire 100 per cent liability of the stockholders, if collected, will be insufficient to make the assets equal to liabilities. *Barnes* v. *Arnold* (1898), 23 Misc. Rep. 197, 51 N. Y. Supp. 1109.

The appellee contends that this action is improperly brought by a creditor—that, under §4952 Burns 1926, it should be brought by the receiver. In the recent case of *Wheeler* v. *Greene, Rec.* (1929), 280 U. S. 49, 50 Sup. Ct. 21, 74 L. Ed. 160, it was held that a suit to enforce the liability of stockholders of a joint-stock land bank under the federal Farm Loan Act was improperly brought by a receiver who was not authorized by statute to enforce individual liability of stockholders and that it should be brought by a creditor's bill in equity. In *Runner, Assignee,* v. *Dwiggins* (1897), 147 Ind. 238, 46 N. E. 580, 36 L. R. A. 645, in an action to enforce a double stockholder's liability under a statute (Acts 1895 p. 202) it was held that such double liability is for the benefit of the creditors of the bank, that the creditors only were authorized to maintain the action and that, "in the absence of some statutory provision conferring the right, neither the corporation nor its assignee, nor receiver can enforce such a liability as that in question." Subsequent to the

decision of that case, §1, ch. 189, Acts 1915, §4952 Burns 1926, was enacted, providing that "where the stockholders of any corporation becoming insolvent are, by any law of this state, made individually liable in any sum, in addition to their capital stock," such liability may be enforced by any "receiver or trustee in bankruptcy or in assignment under the insolvency laws," etc.[1] Section 4952 Burns 1926, however, does not provide that the method of collection of stockholders' liability therein provided shall be exclusive, and it is proper for such a suit to be brought either by a creditor or by the receiver. See *Rogers* v. *Selleck* (1928), 117 Nebr. 569, 221 N. W. 702.

Section 6, Art. 11, Constitution, §212 Burns 1926, is as follows: *"The stockholders in every bank or banking company shall be individually responsible to an amount, over and above their stock, equal to their respective shares of stock, for all debts or liabilities of said bank or banking company."* This section of the Constitution creates a definitely limited liability on the part of the appellee for the benefit of the appellant and it is self-executing, there being a manifest intention that it should go into immediate effect and no ancillary legislation was necessary to the enjoyment of the right given or the enforcement of the duty imposed. 12 C. J. 729; *State* v. *Woodward* (1883), 89 Ind. 110, 46 Am. Rep. 160; *Carroll* v. *Green* (1897), 148 Ind. 362, 364, 47 N. E. 223; *Tinkle* v. *Wallace* (1906), 167 Ind. 382, 389, 79 N. E. 355. It is uniformly held that a constitutional provision imposing double liability on

Note 1. Since this action arose, a general corporation act, ch. 215, Acts 1929, §4822 *et seq.* Burns Supp. 1929 was passed, under which corporations, other than banking and certain other corporations, may be organized for pecuniary profit, and which act purports to repeal ch. 189, Acts 1915, §4952 Burns 1926. The question of whether such repeal was thereby accomplished is not involved in this action and is not decided.

bank stockholders is self-executing. *Smith* v. *Olson* (1926), 50 S. D. 81, 88, 208 N. W. 585; *Lynch* v. *Jacobsen* (1919), 55 Utah 129, 184 Pac. 929; *Willis* v. *Mabon* (1892), 48 Minn. 140, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. 626; *State, ex rel.,* v. *Citizens State Bank* (1929), 117 Nebr. 860, 224 N. W. 868, Id., 118 Nebr. 337, 224 N. W. 868; *Wood* v. *Hamaguchi* (1929), 207 Cal. 79, 277 Pac. 113, 63 A. L. R. 861; *Fredericks* v. *Hammons* (1928), 33 Ariz. 310, 264 Pac. 687; *Western Pac. R. Co.* v. *Godfrey* (1913), 166 Cal. 346, 136 Pac. 284, Ann. Cas. 1915 B 825.[2]

It is the contention of the appellee, supporting the action of the court below, that §6, Art. 11, Const., does not impose any superadded liability upon her or upon the other stockholders of the Studabaker bank for the reason that the term "bank or banking company" as used in such section does not relate to banks of discount and deposit, but that such term is restricted in its meaning and relates only to banks of issue and circulation and to state banks with branches, which are the only banks mentioned in the preceding §§3 and 4 of Art. 11 of the Constitution. The subject of Art. 11 is corporations. It concerns not only banks in existence in 1851, but also banks and corporations thereafter created. The language of §6 regarding its

*Note 2.* See, also, the following cases: *American Nat. Bank* v. *Holsen* (1928), 331 Ill. 622, 163 N. E. 448; *Way* v. *Barney* (1911), 116 Minn. 285, 133 N. W. 801, 38 L. R. A. (N. S.) 648, Ann. Cas. 1913A 719; *Converse* v. *Hamilton* (1912), 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D 1292; *Whitman* v. *Oxford National Bank* (1900), 176 U. S. 559, 20 Sup. Ct. 447, 44 L. Ed. 587; *Hirning* v. *Oppold* (1925), 48 S. D. 70, 201 N. W. 72; *Union National Bank* v. *Halley* (1905), 19 S. D. 474, 104 N. W. 213; *Bodie* v. *Pollock* (1923), 110 Nebr. 844, 195 N. W. 457; *Farmers Loan & Trust Co.* v. *Funk* (1896), 49 Nebr. 353, 68 N. W. 520; *Dupee* v. *Swigert* (1889), 127 Ill. 494, 21 N. E. 622; *Allen* v. *Scott* (1922), 104 Ohio St. 436, 135 N. E. 683; *Lang* v. *Osborn Bank* (1919), 100 Ohio St. 51, 125 N. E. 105; *Chapman* v. *Pettus* (1925), 269 S. W. (Texas Civ. App.) 268; *Austin* v. *Campbell* (1919), 210 S. W. (Texas Civ. App.) 277; *Eau Claire National Bank* v. *Benson* (1900), 106 Wis. 624, 82 N. W. 604.

objects is simple and understandable. The words "every bank and banking company" in their general and ordinary sense certainly include the bank in question here. In construing the meaning of a constitution, its language should be taken in its general and ordinary sense, for "the enlightened patriots who framed our constitution, and the people who adopted it, must be understood to have employed words in their natural sense, and to have intended what they have said." *Gibbons* v. *Ogden* (1824), 9 Wheat. (U. S.) 1, 188. ' "If the Courts venture to substitute for the clear language of the instrument, their own notions of what it should have been, or was intended to be, there will be an end of written constitutions." ' *Greencastle Township* v. *Black* (1854), 5 Ind. 566, 570. A Constitution is an instrument of a practical nature, made and adopted by the people themselves, adapted to common wants and designed for common use. When words are used therein which have both a restricted and general meaning, the general must prevail over the restricted unless the nature of the subject-matter of the context clearly indicates that the limited sense was intended. 1 Storey, Constitution §451; 1 Cooley, Constitutional Limitations (8th ed.) 130, 171; *Commonwealth* v. *Nickerson* (1920), 236 Mass. 281, 128 N. E. 273, 10 A. L. R. 1568; *Busser* v. *Snyder* (1925), 282 Pa. St. 440, 128 Atl. 80, 37 A. L. R. 1515; *People, ex rel.,* v. *Emmerson* (1922), 302 Ill. 300, 134 N. E. 707, 21 A. L. R. 636. External aids and arbitrary rules applied to instruments of this popular character are of uncertain value and should be made use of with hesitation and circumspection. 1 Cooley, Constitutional Limitations (8th ed.) 171.

It is true that, at the time of the adoption of the Constitution of 1851, the only banks required to be incorporated were banks of issue and circulation, but from that fact it cannot logically be reasoned that this

provision should not apply to other banks that might by law later be authorized to incorporate.

State banks of issue ceased to exist after an act of Congress in 1866 imposed a tax of 10 per cent upon their notes used for circulation, the constitutionality of which act was upheld in *Veazie Bank* v. *Fenno* (1869), 8 Wall. (75 U. S.) 533, 19 L. Ed. 482.

The appellee contends that, under the rule laid down in *Bishop* v. *State, ex rel.* (1898), 149 Ind. 223, 48 N. E. 1038, 39 L. R. A. 278, 63 Am. St. 270, viz., that language used in a constitution ratified by the people must be interpreted in the sense most obvious to the common understanding at the time of its adoption, the term "bank and banking company" involved in the case at bar cannot be held to include banks of discount and deposit, for the reason that incorporated banks of discount and deposit did not at that time exist in Indiana separate and apart from banks of issue and circulation. This contention fails, however, because the discussion in the constitutional convention indicates that the delegates were informed regarding the various kinds of banks and that there was a desire expressed on the floor of the convention that "all banks" be "properly restricted." Delegate Borden began his lengthy and learned discourse on the subject of banks and banking with the statement: "Banks . . . are of three kinds: banks of deposit, banks of discount, and banks of circulation." II Debates, Ind. Const. Convention (1850), p. 1919. Delegate Ritchie, voicing a popular prejudice that had grown up against banks said:

"I care not whether we have State or free banks; all I want is, to have them properly restricted. . . . I am opposed to all banks—to use a vulgar phrase, 'they are of the same breed of dogs.' [Laughter.] They are all evils; and perhaps at the present time we cannot say which system of banking will be the

most productive of benefit or injury to the people. But let us place proper restrictions on all kinds of banks; if we are to have any, it is the proper course." II Debates, Ind. Const. Convention (1850), p. 1546.

Banks of discount and deposit, as distinguished from banks of issue and circulation and state banks with branches, must have been known to the framers of our Constitution, regardless of whether such banks then existed in this State. Each of the classes of banks named in §§3 and 4 did a discount and deposit business and a separation of such functions from the issue and circulation of money could readily be contemplated. The cases indicate that banks of discount and deposit existed prior to the adoption of the 1851 Constitution, both as private institutions *(Davis* v. *McAlpine* [1858], 10 Ind. 137), and as chartered institutions *(Gordon* v. *Montgomery* [1862], 19 Ind. 110). Local laws passed at that time expressly empowered certain corporations to do a discount and deposit business. See Local Laws 1837 p. 169; Local Laws 1849 p. 439. The language of §6 was not limited to the two classes of banks which were the subject of §§3 and 4, but was general—"every bank and banking company," and, even if banks of discount and deposit had been unknown to the framers of the Constitution, this broad and comprehensive term must be held to cover banks of discount and deposit thereafter coming into existence, upon the principle that the language of a Constitution (or statute) is generally extended to include new things and new conditions of the same class as those specified which were not known or contemplated when it was adopted. 6 R. C. L. 46; *Palmer* v. *State* (1926), 197 Ind. 625, 150 N. E. 917; *McCleary* v. *Babcock* (1907), 169 Ind. 228, 240, 82 N. E. 453; *Daniels* v. *State* (1898), 150 Ind. 348, 354, 50 N. E. 74. The language of the Constitu-

tion concerns the "genus"—"bank and banking company," and includes the "species"—"bank of discount and deposit," as well as the "species"—"bank of issue and circulation," and "state bank with branches."[3]

The appellee, to support the judgment of the trial court, cites and relies upon the case of *Allen* v. *Clayton* (1884), 63 Iowa 11, 18 N. W. 663, 50 Am. Rep. 716, and other cases which follow it. These cases arose many years ago under provisions of early Constitutions, and, in the main, can be distinguished from the case at bar because of the dissimilar constitutional provisions considered, but so far as there may be conflict, we disapprove and decline to follow their reasoning. In *Allen* v. *Clayton, supra,* it was held that §9, Art. 8 of the Iowa Constitution of 1857, which provided that "every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or by her held, to an amount equal to his or her respective shares so held," was applicable to banks issuing bills of circulation. The court said:

> "Counsel insist, and it is true, that there are banks of issue, and those of discount and deposit. If a corporation possessed all of these powers, it would be a banking corporation, and it would be such a corporation if it had the power only of issuing bills to circulate as money, or, if it only had the power to discount bills and receive deposits, it would still be a banking corporation."

but the court held that:

> "To arrive at the meaning of the words 'banking corporations' in section nine, the sections pre-

Note 3. A homely illustration of this principle can be stated as follows: Had the subject of this section of the Constitution been "dogs" instead of banks and had "collies" and "fox hounds" only existed in Indiana up to the time of its adoption (and had such dogs been mentioned in other sections of the article) the section, if it required the muzzling of "all dogs," would clearly apply to "bull dogs" subsequently coming into the state.

ceding and following it, which have reference to the same subject-matter, must be read and considered. . . . It is there provided that corporations with *banking powers* shall not be created, unless the statute so providing shall be submitted to and be approved by a majority of the electors of the state. This means full or unlimited banking powers; that is, the power to issue bills to circulate as money, and also the power to discount bills and receive deposits. The general incorporation law in force when the constitution of 1857 was adopted was broad enough . . . to permit the organization of banks of discount and deposit, and something more than this was contemplated by the constitution. This being so, . . . the proper construction of section nine . . . is corporations having the power to issue bills to circulate as money."

The only authorities cited in *Allen* v. *Clayton, supra,* are *Pape* v. *Capitol Bank* (1878), 20 Kans. 440, 27 Am. Rep. 183, and *People* v. *Loewenthal* (1879), 93 Ill. 191, where the constitutional provisions considered are readily distinguishable from those at present under consideration.

Practically every state now has in effect either a constitutional or statutory provision for double liability of bank stockholders. Constitutional provisions in substantially the same wording as our own are uniformly given effect and held applicable to banks of discount and deposit. See *Rogers* v. *Selleck, supra; Fredericks* v. *Hammons, supra; Smith* v. *Olsen, supra; Lynch* v. *Jacobsen, supra; Hanson* v. *Soderberg* (1919), 105 Wash. 255, 177 Pac. 827. To affirm the judgment of the lower court here and hold that the constitutional provision regarding "every bank or banking company" applied exclusively to a class of banks that has been extinct for 64 years, could only be done by arbitrarily and unreasonably narrowing the meaning of the term "every bank and banking company," by misapplying the rule stated in those cases where there was held to

be a clear intention that the constitutional provision applied only to banks of circulation. We do not believe that such intention existed regarding §6, Art. 11 of our Constitution, or that the context of the preceding and following sections requires such intention to be presumed. If such intention had existed, the section could easily have been changed by adding the words "of issue and circulation" after the words "bank or banking company." Moreover, it appears from the debates in the Constitutional Convention of 1850 that the delegates refused to adopt an amendment to this section which would have limited it to banks of issue and circulation and made the stockholders individually responsible for all money put in circulation. Upon third reading of "the section providing that (bank) stockholders shall be individually responsible to the amount of their stock, over and above the amount of such stock," Delegate Borden moved to recommit with instructions to insert:

> " 'The stockholders in every corporation or association for banking purposes issuing bank notes or any kind of paper credit to circulate as money, shall be individually responsible for all the notes or bills issued or put in circulation by said corporation or association.' "

This motion and amendment were put to a vote and lost, and the section (§6, Art. 11) was thereupon put to a vote and passed. II Debates, Ind. Constitutional Convention (1850) p. 1641.

In addition to the provisions of the Constitution regarding the double liability of bank stockholders, §3858 Burns 1926 (§13, ch. 8 of the acts of 1873, concerning the incorporation of banks of discount and deposit, as amended by act of 1919, p. 832), provides for an assessment of not to exceed 100 per cent of the par value of the stock "to be levied and collected

as hereinafter (in the act) provided when such assessment is required for the payment of the debts or liabilities of such bank or association or to restore the capital stock thereof." The act provides in case the capital of the bank "is reduced by impairment or otherwise below the amount required by law" for notice to and assessment of stockholders and for the sale of their stock and application of the proceeds. The appellant states in her brief that she "declares (in the complaint) upon this (double) liability as imposed both by the Constitution and the statutes." While this statute is primarily addressed to banks as going concerns and specifically provides for its enforcement by a proceeding *in rem* against the stock to restore an impairment of the capital, a majority of the court are of the opinion that this statute was enacted in furtherance of §6, Art. 11, Constitution, §212 Burns 1926, and that, under it, the double liability for the benefit of creditors may be enforced against the stockholders of an insolvent bank in the process of liquidation.

No question is presented for decision in the case at bar as to whether or not a stockholder who, during the operation of the bank, has paid an assessment of not to exceed 100 per cent required for the payment of debts or liabilities of a bank or to restore its capital stock under §3858 Burns 1926, is subject to the double liability imposed by §6, Art. 11, Constitution, §212 Burns 1926, upon liquidation of the bank, but we may note in passing that similar questions are considered at length in the following cases: *Citizens Bank* v. *Needham* (1926), 120 Kans. 523, 244 Pac. 7, 45 A. L. R. 1202; *Duke* v. *Force* (1922), 120 Wash. 599, 208 Pac. 67, 23 A. L. R. 1354; *Northwestern Trust Co.* v. *Bradbury* (1912), 117 Minn. 83, 134 N. W. 513, Ann Cas. 1913D 69; *Delano* v. *Butler* (1886), 118 U. S. 634, 7

Sup. Ct. 39, 30 L. Ed. 260; *Wood* v. *Hamaguchi* (1929), 207 Cal. 79, 277 Pac. 113.

The complaint properly sets forth facts which show a liability of appellee to appellant under §6, Art. 11, Constitution, and also under §3858, *supra,* and the judgment is, therefore, reversed, with directions to the trial court to overrule the demurrer to appellant's complaint.

Gemmill and Willoughby, J. J., did not participate in the decision of this cause on December 11, 1930. For opinion as originally filed see 174 N. E. 83. The action of the court in modifying the original opinion and in denying the petition for a rehearing was participated in by the entire court as constituted on this date, November 20, 1931. Myers, J., still adheres to the result only, reached in the opinion as modified.