Zimmerman, J.
 

 This case presents a close question and must be decided largely upon an interpretation of Section 3, Article XIII of the Ohio Constitution, in the light of the facts:
 

 That section, prior to its amendment effective July 1, 1937, recited in part:
 

 ‘Stockholders of corporations authorised to receive money on deposit
 
 shall be held individually responsible, equally and ratably, and not for one another, for all contracts, debts, and engagements of such corporations, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares.” (Italics ours.)
 

 Section 710-2, General Code, contains the following definition:
 

 “The term ‘bank’ shall include any person, firm,
 
 *451
 
 association, or corporation
 
 soliciting, receiving or accepting money, or its equivalent, on deposit as a business”
 
 and “includes commercial banks, savings banks, trust companies, special plan banks, and unincorporated banks *
 
 *
 
 *.” (Italics ours.)
 

 The quoted part of tbe Constitution which imposed a superadded liability on stockholders was directed exclusively against those owning stock in corporations authorized to receive money on deposit. Why? To create and maintain confidence in state banks and to afford additional protection to
 
 creditors
 
 transacting business with such banks. See,
 
 Squire, Supt. of Banks,
 
 v.
 
 Standen, Gdn., ante,
 
 1, 3, 18 N. E. (2d), 608, 609.
 

 In connection with the banking business, the expression “to deposit money” generally implies the delivery of funds 'to a bank for employment in the ordinary course of its business, with the understanding that an equivalent amount will be returned upon demand, thus establishing the relationship of creditor and debtor between the depositor and the bank.
 

 What are the circumstances of the instant case? On February 27, 1933, when defendant Harris purchased the stock, The Union Trust Company ceased to function as a bank within the definition embraced in Section 710-2, General Code. It did so under an order of the Superintendent of Banks made pursuant to Section
 
 710-107a,
 
 General Code, which section reads' in part as follows:
 

 “The Superintendent of Banks * * * may order such bank forthwith to suspend the payment in any manner of the liabilities of such bank to depositors and other creditors * * *. Such order shall * * * in no event exceed a period of sixty days; provided that such suspension may be extended for further periods not to exceed sixty days each * * *.
 

 “The Superintendent of Banks may, in his discretion, permit such bank to receive deposits, but de
 
 *452
 
 posits so received shall not ho subject to any limitation as to payment or withdrawal and such deposits shall be segregated and held and used solely to meet such new deposit liabilities * * * not [to] be invested in any manner during the period in which the order of the Superintendent of Banks is in effect. * * #”
 

 Any “deposits” received by permission of the superintendent within the terms of the second paragraph of the above quotation would amount to nothing more than a bailment, the bank acquiring no property in the money deposited, and being prohibited from making beneficial use thereof.
 

 Such order of the superintendent suspending payments to depositors and other creditors continued until The Union Trust Company was placed in liquidation.
 

 It accepted no general deposits and acquired no new
 
 creditors
 
 after February 27, 1933. It is conceded that such date marks the time when payments to depositors in the ordinary course of business were suspended, and the company failed to meet its obligations generally. It never resumed the activities for which it was chartered, and for all practical purposes was under the supervision and domination of the Superintendent of Banks from February 27, 1933. A conservator was placed in charge by the superintendent on April 8, 1933, and a little over two months later the superintendent stepped in and commenced liquidation.
 

 With these comments as a preface, we are brought to a consideration of the case of
 
 Broderick, Supt. of Banks,
 
 v.
 
 Aaron,
 
 268 N. Y., 260, 197 N. E., 274, 103 A. L. R., 684, wherein it was held, under constitutional and statutory provisions' resembling those existing in Ohio, that the status of stockholders for the purpose of enforcing superadded liability is to be determined at the time the bank closes, when such closing is followed by liquidation, and that one to whom stock is transferred after the bank closes cannot be held for
 
 *453
 
 the super added liability, such obligation being that of the transferror.
 

 True, in the New York case the transferee did not acquire its stock before the Superintendent of Banks had actually taken charge, but it was not then certain that the bank was insolvent and would not reopen, for “at that time negotiations were pending for the reorganization of the bank, and if those negotiations had been successful the bank would have reopened.”
 

 In the course of the opinion in the New York case this language was used:
 

 “Nowhere in the statute or Constitution can be found any clear indication that not only those who were stockholders when the bank closed, are to be held responsible, but also those who acquired stock thereafter. * * *
 

 “By the closing of the bank the right of the corporation to conduct a banking business is terminated, or at least suspended. Though even after such closing, stockholders may still transfer their stock, and the new owners thus obtain the status of stockholders, what passes to them by such transfer is only a stockholder’s rights in a corporation which is temporarily or permanently without power to conduct a bank. If the bank fails to reopen, if its assets are insufficient to meet its liabilities, then these new stockholders of the corporation at no time become stockholders in a bank or in a ‘corporation for banking purposes’ within the letter or spirit of the law, and they are not subject to personal responsibility for its debts or liabilities.”
 

 While it must be admitted that the facts in the New York case are not altogether parallel with those in the instant case, the reasoning of the opinion applies with considerable force to the situation presently confronting us. Such opinion appeals to us as a practical view, upon its predicates, and the result reached accords with our ideas of substantial justice.
 

 Here, as has been observed, The Union Trust Com
 
 *454
 
 pany ceased to receive money on general deposit and suspended payment to its depositors in the ordinary course of business on February 27, 1933, by direction of the Superintendent of Banks, acting within his authority. It defaulted in meeting its obligations, and desisted from the pursuits which are ordinarily associated with the normal functioning of a bank. Its status' in relation to creditors then became fixed. It never again engaged in active banking operations, and in a comparatively short time was placed in liquidation. In the absence of some compelling reason, why should creditors be entitled to demand contribution from Harris to pay their debts ? These debts all accrued before he purchased the stock, so it follows that creditors did not become such on the strength of his responsibility as a stockholder. Even now the Superintendent of Banks has an action pending against Mary B.. Sturtevant to collect the added liability on the one hundred shares of stock she sold to Harris on February 27, 1933.
 

 Basing our conclusion upon the controlling organic law of Ohio, applied to the facts disclosed by the record, we do not believe that defendant Harris became a stockholder in a corporation “authorized to receive money on deposit,” within the meaning and intent of such phrase as used in the Constitution. He is therefore not amenable to the double liability imposed by Section 3, Article XIII of the Constitution, or by Section 710-75, General Code.
 

 Counsel for the plaintiff rely on the Ohio cases of
 
 Brown
 
 v.
 
 Hitchcock,
 
 36 Ohio St., 667, and
 
 Barrick
 
 v.
 
 Gifford,
 
 47 Ohio St., 180, 24 N. E., 259, 21 Am. St. Rep., 798, holding that the owners of stock in an insolvent corporation, who are such at the commencement of a creditor’s suit against its stockholders upon their individual liability, are liable for its debts. These' cases appear to have been decided under an enactment passed pursuant to Section 3, Article XIII of the Con
 
 *455
 
 stitution of 1851, providing in substance that
 
 all stockholders
 
 in certain companies shall be held liable to an amount equal to their stock subscribed, in addition to said stock, for the purpose of securing creditors. At the top of page 681 of the opinion in the
 
 Hitchcock case
 
 it is said:
 

 “The expression, ‘all stockholders,’ must be regarded, in the absence of any legislative indication to the contrary, as including not only those as were such at the time the indebtedness was incurred, but all those who successively stand in their shoes in respect to the same stock.”
 

 Therefore, in this class of cases, construing statutory provisions imposing liability upon “all stockholders,” parties were held liable who owned stock either when the debt was contracted or when the action to enforce liability was begun. But even in these cases, stockholders could not be held for debts contracted before they came into ownership of their stock, although subsequent transfer would not relieve them. Sée, 10 Ohio Jurisprudence, 611, Section 451
 
 et seq.;
 
 23 American & Eng. Encyclopaedia of Law (1 Ed.), 884.
 

 We do not regard the Ohio cases referred to as of any real significance in the present controversy.
 

 Counsel for the plaintiff also rely on
 
 Hospelhorn
 
 v.
 
 Poe,
 
 174 Md., 242, 198 A., 582, and
 
 Peterson, Recr.,
 
 v.
 
 Strayer,
 
 121 Neb., 587, 237 N. W., 667. They are not persuasive, because decided upon facts and under laws quite different from those being considered in the instant case. For example, the
 
 Poe case
 
 involved a statute making the transferror and transferee of stock jointly and severally liable, and providing for certain rights of indemnity between them; in the
 
 Strayer case
 
 it appears that the bank was conducted as a going concern, with the acceptance of deposits in the usual manner after the transferees bought their stock.
 

 
 *456
 
 Because of the position adopted, we deem it unnecessary to discuss other points raised by counsel in their briefs and in oral argument.
 

 The judgment of the Court of Appeals is accordingly affirmed.
 

 Judgment affirmed.
 

 Day, Williams, Matthias and Hart, JJ., concur.
 

 Weygandt, C. J., dissents.