STATE EX REL. DEPARTMENT OF FINANCIAL INSTITUTIONS
*v.* HARDY.

[No. 27,478. Filed January 13, 1941.]

*Wade H. Free,* of Anderson, for appellant.
*Mays & Shine,* of Anderson, for appellee.

SHAKE, J.—This is an appeal from a judgment in favor of the appellee entered upon the refusal of the appellant to plead further after the court below had sustained the appellee's demurrer for want of facts to the appellant's third amended complaint. The facts disclosed by the complaint and admitted by the demurrer for the purpose of forming an issue of law were as follows: On October 31, 1931, the Citizens Bank of Anderson, Indiana, a bank of discount and deposit organized under the laws of Indiana, voluntarily closed and entered into a process of liquidation under the jurisdiction of the State Banking Department. The bank was not at that time insolvent. On July 14, 1933, the property and assets of the bank were taken over for liquidaton by the Department of Financial Institutions of the State of Indiana, and on September 26, 1935, the bank was adjudged insolvent and a 100 per cent assessment was levied against its stockholders. In the meanwhile, on August 11, 1933, Thomas M. Hardy died testate, the owner of 30 shares of the capital stock of said bank, and there was an administration upon his estate. The complaint alleges that in the administration of said estate the "executors sold said thirty shares of stock to the defendant Georgia Hardy, and said sale was submitted to and duly approved by the Judge of the Madison Circuit Court, Indiana, and that thereby the defendant Georgia Hardy became and is the owner of said thirty shares of the

capital stock of Citizens Bank, Anderson, Indiana." It was further alleged that the certificate representing said stock was not surrendered by the appellee and that no transfer thereof was made on the books of the bank. The exact date when the appellee acquired the stock is not disclosed, but it was after the Department of Financial Institutions had taken over the affairs of the bank for liquidation.

The third amended complaint was not attacked by any motion to make more specific or to require that facts be pleaded to sustain the conclusions contained therein. It seems to be one of the contentions of the appellant that the sufficiency of the complaint is not before us, because the memorandum accompanying the demurrer did not specifically point out the defects now relied upon by the appellee. As the record is presented to us, however, the judgment will not be reversed if it is determined that the complaint is insufficient, and in considering that subject we are not restricted to the grounds set out in the memorandum to the demurrer. Where a demurrer has been sustained, the court of review may look beyond the memorandum to determine whether the ruling was right on the merits. *Bruns* v. *Cope* (1914), 182 Ind. 289, 296, 105 N. E. 471.

The appellant relies upon that part of the complaint quoted above, and contends that by this allegation the appellee is sufficiently charged with being the owner of the bank stock in controversy. It is admitted that the allegation "that thereby the defendant Georgia Hardy became and is the owner of said thirty shares of the capital stock of Citizens Bank, Anderson, Indiana," is a conclusion, but urged that it is a permissible conclusion of fact. Conclusions in affirmative pleadings are of two kinds—conclusions of

law and conclusions of fact. Conclusions of law have no place in a complaint, add nothing to it, and may be ignored, if not stricken out. Conclusions of fact, though subject to a motion to require the party to plead the specific facts, will otherwise be considered as allegations of all the facts required to sustain them in determining the sufficiency of the pleading. § 2-1005, Burns' 1933, § 155, Baldwin's 1934. A direct charge that one was or is the owner of property is ordinarily considered as a statement of an ultimate fact, although the same end may be accomplished by detailing the facts out of which ownership necessarily arises. While we consider the first part of the allegation of the complaint that "executors sold said thirty shares of stock to the defendant Georgia Hardy, and said sale was submitted to and duly approved by the Judge of the Madison Circuit Court, Indiana," a sufficient charge that the appellee owned the stock in controversy, the clause, "the defendant Georgia Hardy became and is the owner of said thirty shares of the capital stock of Citizens Bank, Anderson, Indiana," which immediately follows the words "and that thereby," must be treated as a conclusion of law rather than of fact, and, standing alone, it would not aid the complaint. *Union Traction Co.* v. *Ross, Rec.* (1919), 71 Ind. App. 473, 125 N. E. 72.

There is another controlling rule of practice, however, to the effect that a demurrer will lie to a complaint which states a cause of action and then anticipates a defense and attempts to avoid it, if the facts stated are not sufficient to avoid or defeat the anticipated defense. Many cases supporting this rule are cited in Vol. I, Watson's Revision of Works' Practice and Forms, § 519, p. 373, p. 376. The complaint before us affirmatively discloses that the appellee acquired the stock in controversy after the bank had

ceased to operate and had entered into liquidation. This suggests an inquiry as to the status and liabilities of one who acquires stock in a closed bank. The problem is not without difficulties, and we shall review some of the cases that appear to throw light upon the subject. In *Broderick* v. *Aaron (Kornberg)* (1935), 268 N. Y. 260, 197 N. E. 274, 103 A. L. R. 684, the New York Court of Appeals considered a situation which, upon the facts, is comparable to the case now before us. An effort was made to enforce an assessment liability against one to whom bank stock was transferred after the institution had passed under the control of the Superintendent of Banks and after it had suspended operations. Section 7, Article VIII of the New York Constitution, 1894, upon which the liability for assessment was based, was as follows:

> "The stockholders of every corporation and joint-stock association for banking purposes, shall be individually responsible to the amount of their respective share or shares of stock in any such corporation or association, for all its debts and liabilities of every kind."

The New York court pointed out in its opinion that there was a statute in that state which defined stockholders of corporations and joint associations for banking purposes so as to include "every owner of stock, legal or equitable, although the same may be on such books in the name of another person." In the consideration of the case, significance was attached to this legislative enactment; while in this state, the constitutional liabilities imposed upon stockholders of banks are regarded as self-executing, no ancillary legislation being necessary to the enjoyment of the rights given or the enforcement of the duties imposed. *Gaiser* v. *Buck* (1931), 203 Ind. 9, 179 N. E. 1, 82 A. L. R. 1348 (annotated). We therefore quote from the New York

opinion for the reasoning appearing therein, recognizing that the situation presented differs somewhat from that before us in the instant case (268 N. Y. 266, 197 N. E. 277, 103 A. L. R. 687) :

"The question is narrow. We do not now determine whether a person who becomes a stockholder in a bank or corporation, which though insolvent or in default in payment of a debt or liability, yet continues to transact business, is subject to personal liability. We may now pass only upon the question of whether such liability is imposed upon the owner of stock in a corporation which did not and could not conduct a bank after the acquisition of the stock.

. . .

"We fail to find in the law any indication of intent to hold responsible for the debts and liabilities of a bank, those who acquired stock in a banking corporation after it had ceased to do business as a bank under a mandate of the State. Until then, the responsibility could be shifted from one person to another by transfer of stock. Thereafter the responsibility became irrevocably affixed to those who were then 'stockholders.' Those who thereafter acquired the stock were at no time stockholders in a corporation which conducted, or which had power to conduct a bank. They at no time as stockholders shared in the control of a banking corporation. They at no time shared in the profits derived from a banking business. . . .

". . . By the closing of the bank the right of the corporation to conduct a banking business is terminated, or at least suspended. Though even after such closing, stockholders may still transfer their stock, and the new owners thus obtain the status of stockholders, what passes to them by such transfer is only a stockholder's rights in a corporation which is temporarily or permanently without power to conduct a bank. If the bank fails to reopen, if its assets are insufficient to meet its liabilities, then these new stockholders of the corporation at no time become stockholders in a bank or in a 'corporation for banking purposes' within the letter or spirit of the law, and they are not subject to

personal responsibility for its debts or liabilities."

More recently, the Supreme Court of Ohio considered the same question in *Squire, Supt.* v. *Harris* (1939), 135 Ohio St. 449, 21 N. E. (2d) 463. Section 3, Article XIII of the Ohio Constitution recited:

> "Stockholders of corporations authorized to receive money on deposit shall be held individually responsible, equally and ratably, and not for one another, for all contracts, debts, and engagements of such corporations, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

Squire, as Superintendent of Banks, in charge of the liquidation of The Union Trust Company, sought to enforce an assessment against one Harris, who acquired stock of the trust company after it ceased to function as a bank. The court said (135 Ohio St. 453, 21 N. E. (2d) 465):

> "Here, as has been observed, The Union Trust Company ceased to receive money on general deposit and suspended payment to its depositors in the ordinary course of business on February 27, 1933, by direction of the Superintendent of Banks, acting within his authority. It defaulted in meeting its obligations, and desisted from the pursuits which are ordinarily associated with the normal functioning of a bank. Its status in relation to creditors then became fixed. It never again engaged in active banking operations, and in a comparatively short time was placed in liquidation. In the absence of some compelling reason, why should creditors be entitled to demand contribution from Harris to pay their debts? These debts all accrued before he purchased the stock, so it follows that creditors did not become such on the strength of his responsibility as a stockholder. . . .
>
> "Basing our conclusion upon the controlling organic law of Ohio, applied to the facts disclosed by the record, we do not believe that defendant Harris became a stockholder in a corporation

'authorized to receive money on deposit,' within the meaning and intent of such phrase as used in the Constitution."

We now come to the consideration of our own constitutional mandate. Section 6, Article 11 of the Constitution of Indiana provided:

"The stockholders in every bank or banking company shall be individually responsible, to an amount, over and above their stock, equal to their respective shares of stock, for all debts or liabilities of said bank or banking company."

We are particularly concerned with the meaning of the words "stockholders in every bank or banking company." In *Gaiser* v. *Buck, supra,* this court was asked to hold that the banks and banking companies referred to were banks of issue and circulation, such as existed at the time the Constitution was adopted; and in *Rowley* v. *Pogue* (1932), 203 Ind. 655, 178 N. E. 449, 181 N. E. 589, 185 N. E. 273, it was urged that the constitutional liability should not extend to loan, trust, and safe deposit companies. This court rejected both contentions. In the *Gaiser* case, the Debates of the Constitutional Convention were looked to, from which it appears that the delegates understood banks and banking companies, as referred to in § 6 of Article 11, to embrace "banks . . . of three kinds: banks of deposit, banks of discount, and banks of circulation." II Debates of Ind. Const. Convention (1850), p. 1919. It was concluded in the *Gaiser* case that the language of the provision of the Constitution was broad enough to include banks of discount and deposit, and in the *Rowley* case the application of the liability was extended to embrace loan, trust, and safe deposit companies.

In the *Rowley* case, the court quoted with approval from *Robinson-Pettit Co.* v. *Sapp* (1914), 160 Ky. 445,

448, 169 S. W. 869, 870, as follows (203 Ind. 668, 181 N. E. 591):

> " 'The real owner of the (bank) stock should sustain the loss, and if the nominal owner of the stock has it to pay he may in such a case recover from the real owner; but the creditor may look either to the transferrer or the transferee.' "

The appellant cites this case in his brief and calls our particular attention to the last clause of the quotation. An examination of the opinion from which the quotation was extracted reveals, however, that the case involved an alleged fraudulent transfer of stock made while the bank was in operation. The authority is therefore not in point here.

As applied to the situation with which we are here dealing, there does not appear to be any sound basis for substantial distinction as to the meaning of the clause "every corporation and joint-stock association for banking purposes," found in the New York Constitution; "corporations authorized to receive money on deposit," as used in the Ohio Constitution; and "every bank or banking company," appearing in the Constitution of Indiana. Paraphrasing the language of the Indiana, New York, and Ohio constitutions, respectively, it might be asserted that the Citizens Bank of Anderson, Indiana, was a bank or banking company—in other words, a corporation for banking purposes, one authorized to receive money on deposit. These constitutional provisions respecting the liabilities of bank stockholders were no doubt imposed in order to exact of those responsible for the policies and practices of the financial institutions referred to that high degree of probity and rectitude which should accompany the assumed responsibility of handling other people's money. The application of the rule would not

seem to be justified when the transferee does not become a stockholder until after the liabilities have become fixed, the assets are frozen, and the bank has ceased to operate as such.

Since the third amended complaint affirmatively discloses that the appellee did not acquire stock in the Citizens Bank of Anderson, Indiana, until after it closed and was in liquidation, there was no error in the action of the Madison Circuit Court in sustaining the appellee's demurrer to the appellant's third amended complaint.

The judgment is accordingly affirmed.

NOTE.—Reported in 30 N. E. (2d) 974.